LESLIE HURST v. STATE.

[58 South. 206.]

1. CARRYING CONCEALED WEAPONS. *Criminal prosecution. ·Defenses. Evidence. Code 1906, section 1105, paragraph "A."*

A defendant charged with carrying a deadly weapon concealed can, under Code of 1906, section 1105, paragraph "A" so providing, show as a defense that he was threatened and had good reason to and did apprehend an attack and in such case it is not necessary for defendant to prove either that he himself heard or that the party who informed him heard the other party make the threats. The only thing necessary is that the party indicted was informed and so believed that he had been threatened and that he had good and sufficient reason to apprehend a serious attack from the party making the threats and that he did so apprehend.

2. SAME.

The question as to the good faith with which a defendant, charged with carrying concealed weapons, carried the weapon is a question for the jury.

APPEAL from the circuit court of Pike county.

HON. D. M. MILLER, Judge.

Leslie Hurst was convicted of carrying a concealed deadly weapon and appeals.

The facts are fully stated in the opinion of the court.

*Clem Ratcliff*, for appellant.

On motion of the district attorney, the court excluded all the testimony of Ford, including of course both threats—the one at the mill in February and the one at church on the day of the trouble. The court gave as its reason, the same as assigned in the objection, viz., that the first threat had coupled with it a condition, that if defendant was ever caught or seen around his house, etc., and this trouble being four miles from McLean's house, therefore defendant could not have had the pis-

tol for protection against that threat. We answer this
objection and ruling of the court, by referring to the
statute itself, as above referred to, which does not say
that threats shall not be a defense for this charge when
made by a husband to deter a man from "fooling around
his wife." The statute is general, and applies to all
threats which furnish a good and sufficient reason to
apprehend a serious attack from an enemy, and that he
did so apprehend, and does not provide an exception
such as indicated by the objection of the district attor-
ney and the ruling of the court—that if the threatened
person was "fooling around one's house or wife," then
threats shall be no defense. The only requirement of
the threats, or the nature of them, is that they are such
as furnish a good and sufficient reason to apprehend a
serious attack by an enemy and that he did so appre-
hend, without other qualification or condition. They,
the threats, need not be given at a particular place,
nor designed to take place at any particular time or
place or way. See *Sudduth* v. *State,* 70 Mo. 250: The
court also excluded the other threat testified to by Ford,
as having been made on the day of the shooting and just
before the shooting. The court said this threat was
excluded for the reason that it was not communicated
to defendant until he reached the church where the shoot-
ing occurred, and he had the pistol before he got to
church, and before he knew of that threat and hence
he could not have had the pistol to protect against that
threat. This threat is competent under *Murdin* v. *State,*
82 Miss. 507. See full opinion. We submit that this
rule draws the line too closely and too narrow. This
threat is eminently competent, material and relevant, es-
pecially so since the defendant had already been ad-
vised of other threats by the same party, and he knew
that he was going to that immediate community that
day and that he would likely see the said McLean there.

*Frank Johnston,* assistant attorney-general, for appellee.

The action of the court in excluding this threat is criticized by counsel in his brief, and he cites two cases, decisions of this court, in support of his contention. I will notice them briefly.

In the *Monroe Sudduth case,* 70 Miss. 250, the point was not involved as presented in this case, and that case presented no question of a conditional or unconditional threat, but the case went off on a different question. The court below fell into the error of holding that an apprehended attack did not justify the carrying of a concealed weapon, unless he had reason to believe that, upon the particular occasion, or at the particular time, as distinguished from other occasions and times, he will be attacked.

In *Murdin's case,* 82 Miss. 508, the defendant had been threatened, and threats had been communicated to the defendant, and there was the testimony of one witness to the effect that these threats had been communicated to the defendant. The error upon which this case was reversed was in the instruction for the state which made the conviction depend upon the fact that the weapon that the defendant carried was concealed, and it did not contain the qualification that if the jury believed that he carried the weapon because of the threats that had been made against him, that he was justified in carrying a concealed weapon; so that this case may be disregarded as bearing any weight upon the question now before the court.

In *Abbott's case,* 68 So. 124, Kentucky Decisions, the threat was that if the defendant married his (the appellant's) sister, he would kill him. That was a conditional threat, but it was proved further in the case that the man did marry the sister, and therefore, the condition of the threat had been fulfilled, and in fact the

man was killed the day after he was married. That evidence was treated by the court, as competent, and it seems to be placed on the distinct ground, that while the threat itself was conditional, yet the circumstances constituting the condition upon which the threat was predicated had actually happened. The reasoning of the opinion seems to be that the happening of the condition contained in the threat is necessary to be proved in order to render the conditional threat competent.

In *Sloan's case*, 22 Mont. 293, the threat that was made was that if the deceased wanted any trouble, he could get it. That could hardly be regarded as a conditional threat and was competent evidence. It's probative force being, of course, a matter entirely for the jury.

In *Phillip's case*, 62 Ark. ——, the man's wife had been staying away from home against his protests, and he said that if his wife did not stay at home, that he was determined to kill her. The court held that this was competent evidence, but that can scarcely be regarded as a conditional threat, as it was more an expression showing the state of his feelings, and the animus towards his wife, and the grievance that he had against her.

In *Johnson's case*, 76 Mo. ——, the threat was that if he fooled with him, that he would fix him, and that was held to be competent. This scarcely arose to the dignity of a conditional threat, in my opinion.

In *Jordan's case*, 79 Ala. 9, a threat was made a few minutes before the difficulty to kill any one who "hits 'M.'" This threat was regarded by the court as a conditional threat, but the court said in its opinion, that it was admissible although it was a conditional threat, when it was further shown by the proof that the deceased soon after the threat, actually struck him, and the difficulty at once occurred. The ground of the deci-

sion in this case seems to be the additional proof that the condition upon which the threat was made had actually occurred, and that this made the conditional threat admissible.

There is a case of *Reed* v. *State,* 68 Ala. 492, where it was held that ''whatever may be the force of the threat, whether absolute or conditional, whether it indicates a purpose only contemplated or fully matured, is admissible in evidence, the court placing the ground of the decision upon the point that such evidence indicated the state of mind of the accused.

As a question *a priori,* I submit to the court for its consideration that an analysis of the ground upon which this rule might rest would eradicate the threat which is clearly conditional, unless it is shown that the conditions indicated in the threat have been fulfilled.

McLEAN, J., delivered the opinion of the court.

The appellant was tried and convicted for the carrying of a deadly weapon under sections 1103 and 1105 of the Code. Mose Hurst testified that he heard many threats made by Charlie McLean against the appellant, and that he had communicated these threats to the appellant; that he heard the threats rumored, and knew that they were general and serious, and so stated to the appellant. Upon cross-examination this witness testified that he himself had not heard McLean make the threats, but that one Enoch Williams had so informed him; and it developed upon the trial that Enoch Williams was present in the court room during the trial of the cause, and was not put on the stand to testify. Thereupon the court sustained the objection of the state to the testimony of this witness as to his having heard of the threats, and as to his having communicated these threats to the appellant. The evidence discloses that there had been bad blood between the appellant and

McLean, and, further, that the first time these parties
met after the threats had been communicated to the ap-
pellant, appellant and McLean became engaged in a
shooting scrape; that this difficulty was brought about
by McLean, and that he, McLean, a very short time be-
fore the difficulty occurred, in fact on the very morning
of the difficulty, had made threats against the appellant.

It was error for the court to exclude the testimony of
Mose Hurst to the effect that he had heard of the threats,
and that he communicated them to the appellant. It is
not necessary for the party to prove either that he him-
self heard, or that the party who informed him heard,
the other party make the threats. The only thing neces-
sary is that the party indicted was informed and so be-
lieved that he had been threatened, and ''that he had
good and sufficient reason to apprehend a serious attack
from the party making the threats, and that he did so
apprehend.'' The whole object and purpose of the stat-
ute is that if the party in good faith honestly believed
that the threats had been made, and coupled with this
threat ''he had good and sufficient reason to apprehend,''
etc. The proof of the threat is made out by showing
that the party on trial, and who is charged with carry-
ing a deadly weapon, was informed and sincerely and
honestly believed that the threat had been made. Mere
idle rumors are not sufficient, but, when the informa-
tion is brought home to the party charged that he has
been threatened, this as to him is proof of the threats.
It must be borne in mind that the party making the
threats is not on trial, and his interests are in no way
affected. The object and purpose of the statute in per-
mitting the party to carry a deadly weapon is in order
that he might protect himself against the attack of his
adversary; and, if it became necessary, before the party
has the right to carry the weapon, that he trace down
to its fountain source the truthfulness of the threat, he

might be deprived of his right to guard against the threatened attack.

After all, the question as to the good faith with which the party carried the weapon is a question for the jury.

*Reversed.*

Mayes, C. J. (dissenting).

It is my judgment that the opinion of the majority is wrong, and I therefore feel compelled to dissent. The appellant is prosecuted for carrying concealed weapons, and the evidence leaves no doubt as to the charge being completely made out by the evidence. The defense is that appellant was justified under the law in carrying the weapon concealed because he was threatened at the time, and had good and sufficient reason to apprehend an attack from an enemy, and that he did so apprehend. Referring to the statutes under which this prosecution and defense is made, they are sections 1103 and 1105 of the Code of 1906. Section 1103 prohibits all persons from carrying concealed weapons, but section 1105, par. "a," allows any person indicted for a violation of section 1103 to show as a defense that the person charged "was threatened," and "had good and sufficient reasons to apprehend a serious attack from an enemy," etc. It is under this clause of section 1105 that appellant rests his defense, and, in order to prove the threat, he introduces Mose Hurst, his father, who undertakes to tell that one Enoch Williams told him (Mose) that McLean had threatened to kill appellant. No threats had been made to Mose, and he knew nothing of any threats ever having been made other than what he says Enoch Williams told him. The trial court excluded this testimony on the motion of the state, and it is my judgment that the trial court's action was proper because such testimony was hearsay pure and simple. In justification of carrying concealed weapons the statute requires proof that the party charged with the violation prove that he

was threatened—actually threatened. This proof can only be made by the persons to whom the threats were made. The threat is a fact to be established, and, like all other facts, it must be established by persons having actual knowledge of the fact, and cannot be established by hearsay. This is the universal rule of law as I understand it. If the jury were called upon to place credence in the story of Mose Hurst, they must rely, not on any knowledge that Mose had of any threats having been made, but on the fact that Enoch Williams told him what Mose said he did, and the further fact that threats were actually made to Enoch Williams by McLean against the life of appellant. If testimony of this character is admissible to prove threats, there can be no limit placed on the chain of communication, and the witness to whom the threats were actually made may be one hundred times removed from the actual witness on the stand. In other words, the threats may be claimed to have been made to person No. 1, who communicated what No. 1, told him to No. 2, who, in turn, told it to No. 3, and so on down, until it reaches person No. 100; and this last person may be put on the witness stand to prove the threats. This is the practical holding of the court as I see it.

The majority opinion says that "the object and purpose of the statute is that if the party in good faith honestly believed that the threats have been made, and coupled with this threat, has good and sufficient reason to apprehend an attack, etc., the proof of the threat is made out by showing that the party on trial and who is charged with carrying the deadly weapon was informed, and sincerely and honestly believed that the threat had been made." I am utterly unable to comprehend how "the proof of the threat" can be established, as the statute says it shall be, "by showing that the party on trial and who is charged with carrying the deadly weapon was informed and sincerely and honestly

believed that the threat had been made." The statute plainly says that, in order to make out a defense under the statute, the party charged must show "that he was threatened," etc.; but the majority opinion says "it is not necessary for the party to prove either that he himself heard, or that the party who informed him heard, the other party make the threats." I cannot understand how threats can be proved except by persons who heard them. Under the terms of the statute, it is not sufficient to justify that a person have "good and sufficient reason to apprehend a serious attack," but such person must in addition be "threatened" with same.

The majority opinion makes of section 1105 a different statute from the one enacted by the legislature. The legislature did not make the right to carry a concealed weapon depend upon any belief as to the existence of the justifying facts, which the party charged with carrying same may have in his own mind at the time, however sincerely and honestly he may entertain this belief, but his right to carry a concealed weapon depends upon the actual fact that he has been threatened; and, when he relies upon this defense, he must prove the facts by the parties who heard the threats made, and he can prove it in no other way.

I can comprehend no reason why hearsay testimony under this statute is any more admissible to prove the facts making the defense than is hearsay testimony in any other cause.