# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF MISSISSIPPI

### AT THE

## SEPTEMBER TERM, 1922.

---

### HUFFSTICKLER v. STATE.

[93 South. 1, No. 22601.]

1. WEAPONS. *Sufficient defense to charge of carrying deadly weapon to show apprehension of attack by one making threats.*

 A defendant, charged with carrying a deadly weapon, concealed, can, under section 1105 (a), Code 1906 (section 831 [a], Hemingway's Code), show as a defense that he was threatened, and had good reason to and did apprehend an attack, and in such case it is not necessary for defendant to prove, either that he himself heard, or that the party who informed him heard, the other party make the threats. The only thing necessary is that the party indicted was informed, and so believed, that he had been threatened, and that he had good and sufficient reason to apprehend a serious attack from the party making the threats, and that he did so apprehend.

2. WEAPONS. *One charged with carrying deadly weapons has burden to establish defense of threats and apprehension of attack.*

 The burden of proving this defense is upon the accused, as is expressly provided by the amendment to this act by Laws 1912, chapter 210 (section 831, Hemingway's Code).

APPEAL from circuit court of Union county.
HON. W. A. ROANE, Judge.

Ed Huffstickler was convicted of carrying concealed weapons, and he appeals. Reversed and remanded.

*Kenneday & Kenneday,* for appellant.

In answer to question : "Did you ever hear of any threats he made, if so, tell what they were and who told you about it?" Ans. "Well, I heard them a number of times from different ones, that was all I could hear, about people saying that he was going to kill me." We respectfully submit that defendant's statement, as above set out, together with his statement on the stand that Layton Lewis "had threatened to kill me, and I was afraid he would do it." meets every requirement of the statute. The apprehension of a "serious attack from an enemy" and the fear of being killed are not only synonymous phrases, but the fear of death, being the greater, necessarily includes the lesser and fully meets and satisfies the spirit and meaning of the statute for such cases made and provided. *Strother's case,* 74 Miss. 447, 21 So. 147. Appellant states, record page 9 : "Had you heard anything at all, about his threatening you then? Ans. Yes, sir, Wilford Archer told me.
Q. He is subpœnæd here, is he? Ans. Yes sir. Q. What did he tell you? Ans. He told me what Ann Lewis said; objected to; what the mother-in-law said, by counsel for the state; objection sustained. Counsel for the defendant excepts." It was manifest error, to sustain this objection. This error was repeated, and the objection to this same point of evidence was sustained by the court on behalf of counsel for the state, when the court announced that the evidence as to what witness heard others say about threats against defendant, by Layton Lewis, this wiped out our entire defense. This kind of evidence does not fall within the rule of hearsay evidence; if so, then the statute is a vain thing, and such a defense is a myth. Suppose I were to enter into a conspiracy to kill my neighbor, should fix the plans, agree upon the method, and get everything ready, with the time and place fixed, and some one should overhear us, could he not tell it? How could such a crime ever be stopped? How could a man ever be prepared for a serious attack if he could not act on what others

told him, and act in good faith on the information? But this court has repeatedly passed on this proposition, holding that testimony of this kind was not hearsay, and competent, see *Hurst's case,* 101 Miss. 402, 58 So. 206; *Payc's case,* 54 So. 725, *Murdin's case,* 82 Miss 507, 33 So. 944. We think the case at bar falls within the rule announced in the above cases. Appellant had a number of witnesses in attendance upon the trial of this case, who would testify about the rumored threats. All of this evidence was shut out by the ruling of the court; a number of minor errors are in the record, some upon which there was ruling and some upon which there was no ruling. We submit them for what they are worth and earnestly insist that there is reversible error in the record and we respectfully ask that the case be reversed.

*Wm. Hemingway,* assistant attorney-general, for the state.

Ed. Huffstickler had had trouble with a man by the name of Layton Lewis. He was apprehensive of an attack by Layton Lewis, claiming that some threats had been communicated to him. He seemed to have the pistol in a barber shop. He did not deny having the pistol. Layton Lewis denied making the threats. There are four assignments of error: (1) Granting instruction No. 1 for the state; (2) modifying instruction No. 3 for defendant; (3) excluding testimony on objection by the state; (4) the same as the 3rd objection except as to a different witness.

The objection to instruction No. 1, is that the last part of the instruction places the burden of proving his defense upon the defendant. This instruction conforms to section 831 of Hemingway's Code which states: "The burden of proving either of such defenses shall be on the accused." Instruction No. 2 as modified, was used. A reading of this would indicate that the modification was proper for it instructed the jury that if they did believe that he had reason to fear an attack, they should find him not guilty. As a matter of fact if he did not have reason to apprehend

an attack, nevertheless carried the weapon, he should have been found guilty under the section of the Code referred to.

As to the third assignment of error, defendant offered to testify that Wilford Archer told him that Ann Lewis said . . . By all the rules of hearsay evidence this was properly excluded. Of course the defendant would have testified as to what Ann Lewis told him as to the threats, or what Wilford Archer told him. The fourth assignment, the witness was attempting to tell what others said about Lewis threatening defendant. This is submitted to the court as being hearsay evidence.

It is respectfully submitted that there is no error in this case. The evidence was conflicting. Was submitted to the jury and they passed upon its weight and credibility.

SYKES, P. J., delivered the opinion of the court.

The appellant was convicted of carrying a concealed weapon, namely, a pistol, from which conviction this appeal was prosecuted.

The testimony showed that on a public street in the city of New Albany he pulled a pistol from his pocket and shot a man, wounding him. He admitted carrying concealed the pistol, but defended upon the ground:

"That he was threatened, and had good and sufficient reason to apprehend a serious attack from an enemy, and that he did so apprehend." Section 1105, Code of 1906 (section 831, Hemingway's Code).

The defendant testified about a previous difficulty with the principal witness for the state, and to the fact that different people had told him that this witness stated he intended to kill appellant. Among others, he stated a person by the name of Archer told him. When asked what Archer told him, he stated in effect that Archer said that Lewis told him of hearing this witness threaten his life. This answer was objected to as hearsay, the objection sustained, and the defendant excepted. The defendant also

testified that a witness by the name of Goodman commun-
icated a similar threat to him. Goodman was placed up-
on the stand, and testified that he never heard this prin-
cipal state witness make a threat, but was told by others
of the threat. His testimony was then objected to as
hearsay, and the objection sustained and the testimony
excluded. The exclusion of this testimony is one of the
errors assigned for a reversal of the cause.

The defense in this cause was in effect that threats made
against his life by this state witness had been communi-
cated to the defendant, and that he in good faith believed
this witness intended to kill him, or, in other words, that
his life was in danger, or he was in danger of great bodily
harm, at the hands of this witness, and for this reason in
good faith carried the pistol. In the case of *Hurst* v.
*State,* 101 Miss. 402, 58 So. 206, this court, in passing upon
this exact question, held that:

"It is not necessary for the party to prove, either that
he himself heard, or that the party who informed him
heard, the other party make the threats. The only thing
necessary is that the party indicted was informed, and so
believed, that he had been threatened, and 'that he had
good and sufficient reason to apprehend a serious attack
from the party making the threats, and that he did so ap-
prehend.' . . . The proof of the threat is made out by
showing that the party on trial, and who is charged with
carrying a deadly weapon, was informed, and sincerely and
honestly believed, that the threat had been made. Mere
idle rumors are not sufficient; but, when the information
is brought home to the party charged that he has been
threatened, this as to him is proof of the threats."

The exclusion of this testimony was reversible error.

It is further insisted by the appellant that one of the
instructions for the state, to the effect that the burden of
proving the defense under this statute was upon the de-
fendant, was erroneous. This was not error, because the
statute expressly makes this an affirmative defense, and
states that:

"The burden of proving either of these defenses [enumerated under the statute] shall be *on the accused."* (Italics mine.)

> *Reversed and remanded.*