# SULLIVAN *v.* STATE.

(Division A.   March 10, 1930.)

[126 So. 646.   No. 28389.]

**A. M. Edwards,** of Mendenhall, for appellant.

**Forrest B. Jackson,** Assistant Attorney-General, for the State.

Argued orally by **A. M. Edwards**, for appellant, and by **Forrest B. Jackson**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The appellant, Arch Sullivan, was convicted in the court below of carrying concealed a deadly weapon, a, pistol, and was sentenced by the court to pay a fine of one hundred dollars and to serve three months in the county jail; from which judgment he appeals to this court.

The state's evidence shows that on one of the primary election days in 1927 appellant carried a pistol.

The appellant admitted that he carried the pistol at the time and place alleged by the state; but testified that he had been informed by Dr. Giles, Reverend Moulder, and John Edwards, an attorney at law, that one Lewis had threatened appellant's life; these witnesses having told appellant that Lewis had said he would kill him. He believed these threats, and for this reason only carried the pistol, in order to protect himself. It was shown by Dr. Giles, and by the attorney, Edwards, that they had told Sullivan that Lewis had threatened his life, Dr. Giles testifying that Lewis was searching for Sullivan with a shotgun, with the intention of killing him, and that he had advised Sullivan not to come into town.

The state did not controvert or offer to contradict the statements of these witnesses that Lewis, armed with a shotgun, was looking for Sullivan; but sought to justify Lewis's action and threat by showing circumstances and letters tending to prove that an illegal intimacy existed between the appellant, Sullivan, and Lewis' wife.

This evidence offered on behalf of the state was objected to by the appellant, the court overruled the objection, and the case was submitted to the jury on the issue that Sullivan's relations with Lewis' wife would warrant

Lewis in arming himself with a shotgun and threatening to take the life of the offender against his family, thereby cutting off the defense given by the statute to one who in good faith carries a weapon because he apprehends a serious attack on his life by an enemy.

At the conclusion of the evidence, the appellant requested the court to grant him a peremptory instruction, which was refused. The testimony that Lewis had threatened the appellant, and that the latter had reason to apprehend a serious attack, was uncontradicted.

The indictment in this case was predicated upon section 871, Hemingway's Code 1927 (section 1103, Code of 1906); and the defense offered to the indictment was predicated upon section 873, Hemingway's Code 1927 (section 1105, Code of 1906), which in part is as follows:

*Deadly Weapons—Not Applicable to Certain Persons.* —1. And person indicted or charged for a violation of section 1103 of the Code of 1906 (section 871, this Code), may show as a defense—(a) That he was threatened, and had good and sufficient reason to apprehend a serious attack from an enemy, and that he did so apprehend.''

Under this statute the defendant's evidence established beyond cavil that the appellant was threatened, and that he had good and sufficient reason to apprehend a serious attack, that he was so advised by a lawyer, a doctor, and a preacher, and that his enemy was searching for him, armed with a shotgun.

The court should not have permitted the state to offer evidence undertaking to show Lewis' reasons for making the threat against the life of appellant; in other words, the state was permitted to appeal to the so-called "unwritten law," and this evidence was incompetent in this character of case.

The attorney-general presents to us the argument that the plea interposed by the defendant in this case, under the statute quoted, is in the nature of a self-defense plea in a homicide trial, and that the one who has provoked

the difficulty cannot rely upon the defense; and cites 13 R. C. L., p. 823, section 127.

There is no analogy between the two cases. The offended husband did not have a right to take the law into his own hands, and, if he had been arrested for a threatened breach of the peace, the trial justice of the peace would have been fully warranted, on this evidence, in placing the offended husband under a peace bond, as authorized and required by the statute in such cases.

The attorney-general also suggests to us that the question of whether or not the defense interposed under this statute as reasonable and in good faith is always for the jury, and cites us to the case of Hurst v. State, 101 Miss. 402, 58 So. 206, in which the court held that it was not necessary for the party to prove either that he, himself, heard the threat, or that it was heard by the party who informed him of it. In that case the question was whether or not the communicated threat, not being heard by the party who communicated it, was competent; and a majority of the court held that it was, and, in conclusion, the opinion said: "After all, the question as to the good faith with which the party carried the weapon is a question for the jury."

The lower court had excluded the evidence of threats, and denied the defense sought to be offered by Hurst. The facts of that case disclose, as held by the court, that the question was one for the jury, that the court should have admitted the evidence tending to establish the defense to the jury, and, in that case, it was a question of whether or not the pistol was carried in good faith, because of the rumors of threats, communicated to the appellant.

We find that in the case of Tipler v. State, 57 Miss. 685, this court said: "It is for the jury to determine from the evidence whether the accused carried a weapon because of apprehension justly and honestly entertained of danger of attack, or whether the apprehension of an attack,

claimed as a justification for carrying a weapon concealed, is founded on good and sufficient reason, or is made a pretext for a violation of the law.''

The facts of that case, unnecessary to repeat here, clearly made the good faith of the accused an issue, which the jury might well have decided adversely to the accused. Although in the Tipler case the threats and reason to apprehend serious attack were far-fetched, still the court held that the lower court should have submitted the defense to the jury.

We do not understand either of the above-quoted cases to hold that, where the defense is established by uncontradicted, uncontroverted evidence that the threat has actually been made, and that the accused could have no reason to believe other than that he was in danger of a serious attack from an enemy, the court should submit the question of the good faith of the accused to the jury.

In the case of McLeod v. State, 140 Miss. 897, 105 So. 757, the defense interposed was that the accused was traveling, was not a tramp, or was setting out on a journey and was not a tramp; and it was undisputed that the accused was making a journey beyond the neighborhood of his acquaintance, and was a stranger to the people along the line of his journey, and was not a tramp; and these facts were not inconsistent with the other evidence in the case; therefore the defendant was entitled to a peremptory instruction, and the jury had no right arbitrarily to disregard the evidence in the case, which was undisputed, and not improbable on its face.

In the instant case the evidence establishing the defense is not disputed, and is, in a measure, admitted to be true by the state, and sought to be justified by an appeal to the ''unwritten law.'' The accused established his defense, and the good faith of the accused in carrying the concealed weapon is not impugned or attacked. He was entitled to the peremptory instruction requested, and the court should have granted it.

Reversed, and appellant discharged.