## Banks v. Commonwealth.

(Decided January 28, 1921.)

### Appeal from McCracken Circuit Court.

1.  Criminal Law—Setting Aside Verdict.—A verdict of guilty in a criminal case will not be set aside on the ground of the insufficiency of the evidence to support it, unless it be so flagrantly against the weight of the evidence as to indicate that it was returned through passion and prejudice on the part of the jury; and this rule applies where the evidence is only circumstantial

in which case the verdict will be upheld unless the circumstances proven are such as to have but little or very remote probative qualities and amount to no more than a mere suspicion of guilt.

2. Witnesses—Impeachment.—Before a witness who is not a party to the suit may be impeached by proving contrary statements which he made out of court a foundation must be laid for the introduction of such contrary statement by inquiring of the witness concerning the statement with the circumstances of time, place and persons present, and this rule applies in criminal as well as civil cases.

3. Searches and Seizures—Warrant.—Under section 10 of our present Constitution, and article 4 of the amendments to the Federal Constitution, it is unlawful for an officer to search the premises, houses or possessions of a suspected offender without a duly issued search warrant authorizing him to do so, and evidence seized as a result of such unlawful search may not be used against the supposed offender in his trial on a charge subsequently brought. But if the search, though made without a warrant, is done with the permission, voluntary agreement and consent of the one rightfully in possession of the thing searched, the above rule will not apply and articles found as a result thereof may be relied on by the Commonwealth as evidence against the offender.

CROSSLAND & CROSSLAND and C. B. CROSSLAND for appellant.

CHAS. I. DAWSON, Attorney General, and CHAS. W. LOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Hardin Banks, was the defendant in an indictment found by the grand jury of McCracken county accusing him of the crime of malicious shooting and wounding of another with intent to kill, and upon his trial thereunder the jury returned a verdict of guilty and fixed his punishment at confinement in the penitentiary for a term of five years, upon which judgment was pronounced, and to reverse it defendant prosecuted this appeal.

A number of alleged errors (some of them formal) are incorporated in the motion for a new trial but only four of them are seriously pressed by appellant's counsel in his brief, they being: (1) The refusal of the court to direct a verdict of not guilty upon motion made therefor by defendant; (2) that the verdict is flagrantly

against the evidence, which it is insisted is insufficient to sustain a conviction; (3) the refusal of the court to admit testimony offered to be introduced by the defendant, and (4) the admission of incompetent evidence offered by the Commonwealth over the objections of defendant.

Grounds (1) and (2) are so closely related that they may be disposed of together, and in order to do so it will be necessary to make a statement of the substantial facts as proven by the testimony. Sloan's grocery, located at the corner of Twelfth and Jefferson streets in the city of Paducah, was broken into about twelve o'clock on the night of February 29, 1920. Some policemen of the city seem to have received information at once of the burglary and they, with others, including John Clements (the person shot) went immediately to the scene, arriving there at five minutes past midnight. Some of the parties stationed themselves in front of the grocery while others, including Clements, went to the rear where was located a garage, the door to which they found open and a transom above the door leading from the garage into the grocery was opened. The parties prized open the back door of the grocery and Clements started to go in when he received the shot which struck him in the mouth, the bullet passing through his tongue and lodging in the back part of his neck, from which place it was extracted by physicians at the hospital to which he was taken. The burglar who did the shooting immediately ran out past or over the body of Clements and fled down an alley, but as he passed out of the garage he fired another shot at another member of the party who was standing at or near the garage door, but that shot missed the one at whom it was aimed. A policeman who knew defendant, and by whom he ran that night after the shooting, testified that from the best impression he could obtain of the fleeing burglar he very much resembled in build, size and features the defendant. There was about three inches of snow on the ground and no one had travelled the alley after the snow fell and before the burglar ran through it in his flight. Some members of the party followed the tracks to a house not far distant located at Thirteenth and Clay streets. For some reason they did not ascertain that night who lived in that house, but the next morning the tracks were again traced from the grocery to the same house at Thirteenth

and Clay streets, and it was there learned that defendant and his father occupied the house, and defendant, who appeared at that time, was wearing a pair of shoes the peculiar shape of which would indicate that the tracks, which were also peculiarly shaped, had been made by those shoes. The next day, which was Monday, some officers of the city again went to the house and while there they asked the father of defendant for the latter's shoes and he (willingly so far as the record shows) gave them to the officers who took them and applied them to some of the tracks left in the snow which had not melted, and there was a complete fit. Defendant was then arrested, and had on a corduroy cap and a mackinaw coat the same as a witness testified that the fleeing burglar wore on the night of the shooting. Defendant at the time of his arrest also had upon his person a 45 caliber Colts automatic pistol with only three loaded cartridges in it and with two of the chambers empty.

Defendant denied all knowledge of both the burglary and the shooting and stated in his testimony that he was at a named pool room from early in the night until near twelve o'clock when he went home and spent the remainder of the night. In support of his alibi two or three witnesses at the pool room say that he left there about fifteen minutes before twelve o'clock, and his father testified that he arrived home ten minutes before twelve. Only two of the alibi witnesses fixed the time by observing a timepiece; one of them was the owner of the pool room and the other one was defendant's father. They do not say that their timepiece, which they so cautiously observed on that particular night, was correct, but be that as it may, the proven facts which we have related establish strong circumstances pointing to the guilt of defendant and which were amply sufficient to authorize a submission of the defendant's guilt to the jury, and its verdict of guilt can not be said to be flagrantly against the evidence, especially where the only contradiction of the guilty circumstances consists in defendant's denial and the vague and unsatisfactory alibi which he sought to establish by his witnesses.

In the case of Hall v. Commonwealth, 152 Ky. 812, where the evidence against the defendant was entirely circumstantial this court in declining to set aside a verdict of guilty upon the ground that the evidence was in-

sufficient to authorize it, said: "The unanimous finding of the jury was that the defendant committed the deed. Our rule is not to disturb a verdict in a criminal case unless it is palpably against the evidence. (Wilson v. Com., 140 Ky. 1.) While the evidence against the defendant is purely circumstantial, it was sufficient to take the case to the jury, and under the rule we have often laid down, we cannot disturb the finding of the jury." Only the same character of evidence on the part of the Commonwealth was introduced in the case of Miller v. Commonwealth, 182 Ky. 438, and in denying a similar contention made by defendant's counsel, as is made here, we said: "While this evidence is all circumstantial, it is certainly such evidence as tends to show the guilt of the defendant and required a submission of the case to the jury. Not only so, but this evidence was amply sufficient to sustain the verdict of the jury." Numerous other cases from this court, rendered prior to and following those referred to, sustain the rulings therein. The numerous cases cited and relied on by counsel for appellant are not in point, since the testimony for the Commonwealth in each of them consisted only in vague circumstances with but little, if any, probative force and creating at best only a suspicion of the guilt of the defendant on trial. As an illustration of them we need only notice the case of Williams v. Commonwealth, 182 Ky. 711. The evidence in that case as narrated in the opinion was correctly held to be insufficient to sustain a conviction because, as appeared from the record, the proven circumstances relied on by the Commonwealth were not only remote and weak, but were not inconsistent with defendant's innocence. It was a prosecution for the larceny of fifty dollars in money and the evidence showed that another had the better opportunity of committing the theft and that the proven circumstances pointed to her guilt more than to that of the defendant. It was also pointed out that such other person did not testify in the case nor was she offered as a witness. In its final summary this court in that opinion said: "But whatever probative effect the offer might have had in this trial, we are convinced that it was necessarily small, and was at best but a suspicious fact which, standing alone, is insufficient to sustain the conviction. Lucas v. Commonwealth, 147 Ky. 744; Blankenship v. Commonwealth, Idem. 768. Especially are we

satisfied with this conclusion when the facts show that another (Henrietta Wilson) had greater opportunities and was much more liable to have committed the offense than defendant." The points of difference between the facts of the other cases relied on and those of the instant one could be easily shown, but we do not deem it essential to consume the time and space necessary therefor. It will therefore be seen that grounds (1) and (2) are unavailable to defendant on this appeal.

The offered testimony which the court rejected and which forms the basis of ground (3) consisted in the proposal of defendant to prove by a witness that the officer who conducted the examination of the tracks on the night of the shooting traced them beyond Thirteenth and Clay streets to a point where they were lost and then said: "We will call this off and go back and say the defendant stopped there at Thirteenth and Clay." The court refused to permit the witness to testify to any such statement of the officer and it is now complained that the ruling of the court in that respect was a grievous and prejudicial error. Defendant had the right to impeach the officer as a witness by showing that he had made statements contradictory of his testimony as given on the trial (Civil Code, section 597), but such contradictory statements, made out of court (if the witness is not a party) may not be proven, unless the witness sought to be contradicted is first inquired of concerning the statement, with the circumstances of time, place and persons present. (Civil Code, section 598.) This practice, with reference to the impeachment of witnesses other than a defendant, obtains in criminal trials. Higgins v. Commonwealth, 142 Ky. 647, and Taliaferro v. Commonwealth, 151 Ky. 10. The officer in this case whose testimony was sought to be impeached by the rejected testimony, was not inquired about the statement when he was upon the stand, and no foundation was laid or attempted to be laid for the introduction of the statement as is required by section 598, *supra*, of the Civil Code of Practice. It is therefore manifest that the alleged error constituting ground (3), relied on for a reversal, is also without merit.

The incompetent evidence complained of in ground (4) consists, (a) in the statement of defendant's father to the officer when the shoes were obtained that they belonged to the defendant, and (b), that the shoes were

wrongfully obtained through an unlawful search of defendant's premises and that their evidentiary effect may not therefore be obtained by the Commonwealth, under the doctrine announced in the recent case of Youman v. Commonwealth, 189 Ky. 152.

The contention made in subdivision (a) is unavailable, since the court sustained an objection to the offered testimony and excluded it from the consideration of the jury. If, however, the court had not so acted, the error would not be material and prejudicial, since it was abundantly proven that defendant was the owner of the shoes and was wearing them on the Sunday after the shooting occurred, which was the day before he was arrested. This fact was testified to and defendant did not contradict it nor did he deny anywhere the ownership of the shoes.

Neither is the complaint made in subdivision (b) available to the defendant since the obtension of the complained of evidence (the shoes) was procured in a way essentially and materially different from the course pursued in the Youman case relied on, and the principles of that case can not apply to the facts of this one. The court in that case was dealing with a denounced, *unlawful* and *forcible* search of one's premises without his permission or voluntary consent and without a search warrant authorizing the officer to make it. The only fact in common with the two cases is that the officer did not have a search warrant. The "search and seizure" which the opinion in the Youman case forbids is a compulsory one, or one made in opposition to the will of the person in possession of the searched premises and to which he is compelled to submit, and is one made without his voluntary permission and therefore a forcible one rendering the searcher a trespasser *ab initio*. It was not intended by the court in that opinion to hold that it would be unlawful or incompetent to search premises with the knowledge and permission of the one lawfully in possession thereof. The act in that case would be stripped of all trespassing and unlawful features and consequently void of invalidating qualities. The sacredness of the premises and the security of the possession of the owner, which the forbidding constitutional provisions were designed to protect, would not be violated in that case. The father of appellant was rightfully in possession of the house in which the shoes in this case were found; in

fact, he himself willingly procured the shoes and delivered them to the officer.

This conclusion is a reasonable and logical one to be drawn from a consideration of the object and purpose of the constitutional provisions limiting the right of search of the premises of the citizen and of seizure as the result of it. But we are not without both text and judicial authority for the position taken. In treating the subject the writer in 35 Cyc. 1265, says: "Nothing will justify searching a dwelling for stolen property without a warrant for that purpose, *unless made with the consent or by the invitation* of the owner;" and on page 1276 it is said: "He (the officer) is also liable if he enters a dwelling house of another *against the will of the occupant* for the purpose of searching for stolen property without a warrant therefor." In the note to the case of McClurg v. Brenton, 123 Iowa 368, 98 N. W. R. 881, 101 A. S. R. 323, Mr. Freeman, the writer, says: "Perhaps, after a person is alleged to have committed a crime his premises may be searched for evidence thereof, without a warrant, by permission and with the assistance of the servant or agent of the owner," citing State v. Griswold, 67 Conn. 290, 34 Atl. 1046, 33 L. R. A. 227, and Grim v. Robinson, 34 Neb. 540. In the McClurg case the court recognizes the right of the officer to search one's premises without an authorizing warrant if it is done with the owner's consent. In the Griswold case defendant was indicted for arson. The officers searched his office with the assistance as well as with the permission and consent of a servant whom the defendant had left in charge. Articles of a damaging evidentiary nature were found and the court held under the facts that they might be introduced and otherwise used as evidence against the defendant.

We therefore conclude that it would be carrying the doctrine of the Youman case entirely beyond reasonable limitations to apply it to the facts of this case, even if what was done by the officer in procuring the shoes could be denominated a "searching" of the premises. It might be true that if the defendant's father, or he himself, if present when the officer appeared and demanded the shoes, had objected and the officer had ignored the objection and forcibly entered the premises and obtained the shoes, or if the search had been made in their absence and without their consent, the doctrine of the You-

man case would have prevented the Commonwealth using them as evidence. We have no such case however, and are constrained to hold that the court committed no error in allowing the shoes to be introduced and otherwise used as evidence upon the trial.

Finding no error prejudicial to the substantial rights of the defendant the judgment is affirmed.