## Banks v. Commonwealth.

### (Decided November 28, 1922.)

## Appeal from Scott Circuit Court.

1. Homicide—Excusable or Justifiable Homicide.—One, who is without fault, is excused for slaying an antagonist, if he in good faith believes upon reasonable grounds, that he is in danger of death or great bodily harm at the hands of the antagonist and there appears to him in the exercise of a reasonable judgment no other safe way to avoid the danger, or apparent danger, except to kill, although the danger may be only apparent, and no real danger is imminent.

2. Homicide—Excusable or Justifiable Homicide.—If one is at fault in causing and bringing on the difficulty in which he becomes endangered, and thus makes the danger to himself excusable on the part of his antagonist, he can not be excused upon the ground of self-defense, when in the course of the encounter it appears to be necessary to kill in order to save his life.

MAT S. BRADLEY, JAMES B. FINNELL, JR., JAMES BRADLEY, W. S. KELLEY and L. F. SINCLAIR for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT— Affirming.

The appellant, Henry Banks, was accused by an indictment of the crime of wilful murder. Upon a trial he was found guilty of that crime by the jury, and the penalty for the crime fixed at death. In conformity to the verdict, he was adjudged to be guilty of the crime, and that he should suffer the penalty, as provided by law in such cases. His motion to set aside the verdict and to grant him a new trial was overruled. He has appealed from the judgment, and seeks a reversal and the ordering of a new trial. The nature of the ground upon which

a reversal is urged makes necessary a statement of the facts as they appear from the evidence. Arnold was the owner of a drug store in Georgetown, and presumably for the protection of his building and business, from depredations by burglars, he employed Perkins to remain on watch in the building at night. Barkley, one of the regular policemen of the city and assigned to night duty, knew of the presence of Perkins in the building and his duties there, and on a night paid a visit to Perkins at about one o'clock a. m. He remained for a short time engaged in talking with Perkins and was just preparing to leave the building when Perkins heard, as he supposed, some person at the rear of the building, and requested Barkley to remain. Perkins then went to a rear window and observed the appellant upon the outside. Appellant walked up to the window and peered in from the outside. Appellant was then heard climbing up the wall of the building and then to come in through a window in the third story. He then walked down the stairway from the third story to the second and turned on the light and attempted to open the safe. Perkins and Barkley who were on the floor of the lower story could not see the appellant while he was in the third and second stories, but could hear him and could see the reflection of the light when it was turned on in the second story. They placed themselves in front of the stairway which led from the second story to the first, and awaited the coming of appellant for the purpose of arresting him. Perkins had a flashlight in his left hand and a revolver in his right, and Barkley, also, had a drawn revolver, and was standing a little in the rear of Perkins. After appellant had moved around in the second story and attempted to open the safe, he turned out the light on that floor and proceeded to come down the stairway to the first floor where Perkins and Barkley were. Four or five steps from the foot of the stairway there was a landing, and when appellant, who was proceeding down the stairway with a drawn revolver in his hand, had arrived upon the landing, the light from the flashlight in the hand of Perkins revealed to appellant the presence of Barkley, upon whom the light shone, and appellant immediately discharged his revolver at Barkley and Perkins, and the evidence for the Commonwealth conduces to prove that the shot struck Barkley, passed through his body and caused his death a few hours afterwards. Immediately following the shot from appel-

lant, Barkley and Perkins opened fire, discharging their revolvers at him and continuing until several shots were fired by them. The appellant after his first shot continued to discharge his revolver at Barkley and Perkins until he had fired four or five shots at them. He then fell, but arose and started at Perkins, who shot at him again, and he again fell, and while Perkins was giving attention to Barkley, appellant made his way in the darkness out of the house and escaped, but had received three flesh wounds. A bullet passed through the leg of Perkins' pants, and all the shots from the pistol of appellant struck near the floor where Barkley and Perkins were standing. The foregoing were the facts which the evidence for the Commonwealth conduced to prove. The appellant deposed in his own behalf, that he was acquainted with the fact that the third story window, through which he entered, was not fastened down on account of the absence of any device with which it could be fastened, and that he climbed up the wall of the building, and entered it through this window for the purpose of stealing whiskey; that he turned on the light in the second story for an instant to discover where the stairway went down and then turned it out; that he had an automatic pistol which contained nine shots, and which, as he started down the steps, he carried in his hand, taking it from his pocket at the time; that he did not recognize either Barkley or Perkins; that Perkins threw a flashlight upon him and immediately Perkins and Barkley began shooting at him and wounded him, before his pistol was discharged at all, and when he was struck by a bullet he was knocked over backward, and as he fell his pistol was elevated and was discharged without intention on his part to shoot.

The grounds for a new trial rely upon only two alleged errors of the court; one of them was in the admission and rejection of evidence, and the other was the failure of the court to properly instruct the jury as to the law pertaining to the case.

(a) A properly certified transcript of the evidence on file shows that there was not any evidence admitted which was objected to by the appellant, nor was any evidence excluded which was offered by him.

(b) The appellant insists that the instructions given by the court defining his right of self-defense contained an unsound principle, and, also, a qualification limiting the right of self-defense, and that the qualification should

not have been given because it was without support in the evidence. This is the only alleged error in the trial in which appellant suffered a conviction, that is complained of in the brief. The appellant insists that the instruction as given required the jury, before it was authorized to acquit him upon the ground of self-defense, to believe from the evidence that he was in actual impending danger at the hands of Barkley or Perkins when he fired the fatal shot which killed Barkley, and denied him the right to shoot in self-defense if he believed and had reasonable grounds for believing that there was immediate impending danger, and there appeared to him no other safe means of avoiding the danger or apparent danger, except to shoot and kill one or both of them, although the danger was only apparent and did not actually exist. There could be no doubt of the incorrectness and prejudicial character of the instruction if it was susceptible of the construction which appellant places upon it, as it has always been held that the law of self-defense authorized one who was without fault to slay an antagonist, if he in good faith believed upon reasonable grounds, that he was in danger of death or great bodily harm at the hands of his antagonist, although an actual danger was not imminent. Sizemore v. Commonwealth, 158 Ky. 492; Coffman v. Commonwealth, 10 Bush 496; Cockrill v. Commonwealth, 95 Ky. 22; Austin v. Commonwealth, 28 K. L. R. 1087; Dossenbach v. Commonwealth, 30 K. L. R. 749; Heck v. Commonwealth, 163 Ky. 518. The instruction, however, is not susceptible of the construction insisted upon, since it plainly directs the jury, that if the appellant believed, and had reasonable grounds for believing that when he shot Barkley he was in danger of death or great bodily harm at the hands of Barkley or Perkins, and there appeared to him in the exercise of a reasonable judgment no other safe way to avert the danger or apparent danger then impending, except to shoot and kill Barkley, it should find him not guilty. The instruction was the ordinary and approved instruction governing the right of self-defense, except its language required the appellant in arriving at the belief that he was in immediate impending danger to exercise a reasonable judgment under the circumstances surrounding him. This was the equivalent to saying, that one is not justified in taking life from a belief in the existence of impending danger, when the reasons for such belief are groundless and un-

reasonable. Appellant does not question the soundness
of the principle stated in the qualification to the right of
self-defense embodied in the instruction, but he insists
that the qualification was erroneous, because there was
no evidence upon which to base it upon the well estab-
lished doctrine that instructions should always be pred-
icated upon the evidence. In this, however, we think
the appellant is in error. The jury was substantially
advised by the qualification that if appellant went upon
the premises, where he shot and killed Barkley, for the
purpose of committing an unlawful act and for the pur-
pose of resisting arrest while there, had previously
armed himself, and shot at the deceased, for such pur-
pose, and thus brought on the affray, he could not jus-
tify such shooting upon the ground of an impending
danger, which he had caused and brought upon himself
by attempting first to kill Barkley and Perkins. The
qualification does not take from him the right of self-
defense if the jury believed the facts to be as he stated
them,—that is, that Barkley or Perkins first put him in
danger by shooting at him. It is insisted that no at-
tempt was made to arrest the appellant, and for that
reason a statement upon that subject had no place in
the instruction. If the testimony of the Common-
wealth is to be believed, and the jury was authorized to
give it credence, the appellant did not give the officer an
opportunity to arrest him or to demand his submission
to arrest, but immediately upon the sight of the police-
man fired upon him and continued to shoot at him and
Perkins, until he himself fell. He thus placed Barkley
and Perkins in danger of losing their lives at his hands,
and made excusable upon their part of whatever danger
they subjected him to. It is a well established doctrine
that if one is an aggressor or provokes a difficulty or
affray, he can not invoke the right of self-defense to jus-
tify the killing of his antagonist, unless he first, in good
faith, withdraws or attempts to withdraw from the com-
bat, and that, too, in a way that his adversary will see
that he intends to withdraw, and he cannot justify the
slaying of an adversary, because in the course of a ren-
counter, when to save his own life or to save himself
from great bodily harm, it becomes necessary to kill,
where he has been at fault in causing the difficulty in
which he becomes endangered. Oder v. Commonwealth,
80 Ky. 32; Morrison v. Commonwealth, 24 Ky. L. R.
2493; Holmes v. Commonwealth, 15 K. L. R. 659; Little

v. Commonwealth, 7 K. L. R. 531; Hourigan v. Commonwealth 89 Ky. 305; 13 R. C. L. 778; Thompson v. Commonwealth, 13 K. L. R. 399; Moore v. Commonwealth, 143 Ky. 405, and others too numerous to mention. Though the qualification doubtless required the jury to believe more things, before denying a plea of self-defense, than were necessary, as all that was necessary would have been that appellant brought on the affray by first shooting and making the danger to Barkley imminent, so that the shooting by Barkley was excusable; but the other facts mentioned in the qualification were not denied by any evidence but admitted substantially, and were therefore not prejudicial. By his own evidence, the appellant proved that he had broken into the building for the purpose of stealing and was thus guilty of a felony; that he had beforehand armed himself with a deadly weapon, which he was carrying in his hand, and which could have been for no purpose except to use it murderously upon any one who might attempt to obstruct his purpose, or to aid him in escape from capture, and the evidence for the Commonwealth conduces to prove that the moment he detected the presence of the policeman, he shot at him and mortally wounded him. The circumstances are such as to justify a jury in inferring that he shot and killed the policeman to escape an arrest of which he must certainly have had well founded apprehension when he was caught in the commission of a felony. The evidence seems to have been ample upon which the qualification to the right of self-defense was based. There appears upon the whole record no error of the trial court prejudicial to appellant, and while the judgment is the severest which the law imposes, the murder was indefensible and without any mitigation, and the judgment must therefore be affirmed.