## Gilliland, et al. v. Commonwealth.

(Decided May 11, 1928.)

### Appeal from Pulaski Circuit Court.

1. Criminal Law.—Search made by officers without warrant will not operate to exclude the evidence discovered by the search, if the search was consented to by defendant himself or by some one authorized to consent for him.

2. Searches and Seizures.—Provisions of Constitution Ky., sec. 10, and of Federal Constitution (Amendment 4), guaranteeing right to immunity from unreasonable searches and seizures, do not apply to unlawful searches on premises or possessions of persons other than the defendant, since intention is to protect right of privacy of person's own premises and possessions.

3. Searches and Seizures.—Sons, who had management and control of farm owned by father, living with sons under mutual arrangement, had such proprietary possession and interest in buildings as to render search, in absence of search warrant, illegal, without their actual or imputed consent.

4. Searches and Seizures.—Where sons were in actual management and control of farm premises owned by father, search of buildings

for intoxicating liquors without search warrant with father's con-
sent was illegal, under Constitution, sec. 10, in prosecution of sons
for manufacturing liquor, unless father was mentally competent.

5.  Criminal Law.—In prosectuion of sons, managing and controlling
premises owned by father, for illegal manufacture of intoxicating
liquor, refusal to submit to jury question of mental competency
of father consenting, in sons' absence, to search of premises by
officers not having warrant, held error, since father's mental in-
competency would render evidence obtained by the search in-
competent.

W. O. HAYS and MARGARET HAYES SEBREE for appellant.

J. W. CAMMACK, Attorney General, and GEO. W. MITCHELL,
Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellants and defendants below, Victor and An-
drew Gilliland, were convicited in the Pulaski circuit
court at the trial of an indictment accusing them of il-
legally manufacturing intoxicating liquor. Their motion
for a new trial was overruled, and from the judgment
pronounced on the verdict they prosecute this appeal,
and by their counsel urge as grounds for reversal: (1)
Incompetent evidence introduced by the commonwealth
over their objections and exceptions; (2) failure of the
court to sustain their motion for a verdict of acquittal;
and (3) refusal of the court to instruct the jury on the
whole law of the case. Before determining any of them,
a brief statement of the circumstances and of the facts
proven on the trial will be necessary.

Defendants are both adults, and lived with their
parents upon premises owned by their father. About
two years before the discoveries for which they were
indicted their father was stricken with paralysis, and be-
tween then and the time of such discoveries he sustained
another stroke, and a number of physicians, including
the one who attended him regularly, testified that those
strokes had not only impaired him physically but also
mentally, and that, according to their opinion, his mind
was so weakened as to incapacitate him for the trans-
action of business or to grasp or understand what he
was doing. There was also uncontradicted testimony
that, after the first stroke, some kind of arrangement was
made whereby defendants took charge and control of the
premises, and exclusively, or to a large extent, managed

them thereafter, and were so doing at the time complained of herein.

About 3 o'clock one afternoon the sheriff of the county and two or three of his deputies, with a federal prohibition officer, went from Somerset to the Gilliland home, which had a number of outhouses around it, immediately contiguous to the dwelling, consisting of barns, stables, garages, etc. When the officers arrived, both of the defendants were absent, and neither of them was on the premises. The official posse had no search warrant issued either by a federal or state officer. It was proven, without contradiction, that the federal officer boldly asserted that he could lawfully search without a search warrant, and, therefore, that he needed none, and for that reason, as it is proven and the sheriff admits, he procured the federal officer to go along, since he claimed the right to search without a warrant. Upon arriving at the place, the federal officer, who had been chosen as foreman or spokesman of the party, did the talking to the elder Gilliland, and what then transpired is thus told by the sheriff:

"Q. When you arrived there, who was the spokesman of your party? A. Mr. Henson (the federal officer) was.

"Q. What did he have to say when he met Mr. Gilliland? A. We drove up in the yard to the house, and Mr. Henson said he would tell the old man our business, and he told him, and told him we had information that moonshine whisky was being made there, and we come out to look it over, and Mr. Gilliland said he didn't know anything about it, and to go ahead and look."

That testimony was corroborated in its substance by the deputy sheriffs who were along, but the federal officer did not appear as a witness at the trial. The sheriff also said that the elder Gilliland was "decrepit and in poor health and in a poor condition," and that testimony was corroborated by every witness who testified upon the subject, and was contradicted by no one, and which was also true with reference to his mental condition.

The officers, pursuant to what they claim was a consent for the search, looked about over the premises, but made no search of the residence. At one outside place

they found some evidence of a more or less convincing nature that whisky had been manufactured in a garage located near to the residence. They procured an ax and broke the locks off of that and other buildings similarly located, and discovered a still in the garage, and some liquor therein, and in the same manner of entry they discovered liquor in another outbuilding, as near, if not nearer, to the residence as was the garage. The court excluded all of the testimony as to the mental condition of the elder Gilliland, and declined to instruct the jury with reference thereto, and also overruled defendant's motion for an instruction to acquit them. With this brief statement of the facts we will now proceed to dispose of the grounds relied on for reversal.

Ground (1) is based upon the contention that the discoveries made in the circumstances indicated, under the principles announced in the case of Youman v. Commonwealth, 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303, and an unbroken line of cases following it, were incompetent because obtained by the officers without a search warrant. But we have held in a number of cases, and without exception, that, although the officers may not have had a search warrant, still the search would not operate to exclude the discovered evidence made thereby if it was made and done by the consent of defendant himself, or some one legally vested with the authority to consent for him; and for the purposes of this opinion we will refer to the former as *actual* consent, and to the latter as *imputed* consent. Illustrations of the many cases giving such effect to actual consent are: Commonwealth v. Meiner, 196 Ky. 840, 245 S. W. 890; Howard v. Commonwealth, 197 Ky. 297, 247 S. W. 10; Brown v. Commonwealth, 208 Ky. 345, 270 S. W. 833; and Wax v. Commonwealth, 214 Ky. 480, 283 S. W. 430; and illustrating cases giving such effect to imputed consent are: Banks v. Commonwealth, 190 Ky. 330, 227 S. W. 455; Id., 196 Ky. 639, 245 S. W. 296; and Gray v. Commonwealth, 198 Ky. 610, 249 S. W. 769. We, however, have held that the consent of the wife of defendant whom the searching officer found in or on the premises of her husband was not sufficient to create imputed consent by the latter so as to bind him and to thereby render the discoveries made by the search competent evidence against him, and some of the cases so holding are Duncan v. Commonwealth, 198 Ky. 841, 250 S. W. 101; Potowick v. Com-

monwealth, 198 Ky. 843, 250 S. W. 102; and Veal v. Commonwealth, 199 Ky. 634, 251 S. W. 648. The principles announced by all of the cited domestic cases are also sustained by foreign ones and text-writers, and which are cited in our earlier opinions on the questions referred to.

There is another principle which we and other courts uniformly adhere to, i. e., that the constitutional provisions of both the state and Federal Constitutions against unreasonable and unlawful searches without a search warrant, and the consequent incompetency of the testimony discovered thereby have no application to unlawful searches of the premises or possessions of another than the defendant, since such provisions were adopted for the purpose of securing one's right of unmolested privacy in *his* occupied premises and his freedom from disturbance of *his* possession of the articles and things forbidden by such provisions to be searched without a warrant therefor. Therefore we uniformly have held that, where the defendant on trial had no proprietary possessory interest in the premises or things searched, but which were owned and possessed by an entire stranger to him, he could not complain of the invalidity of the search, since such invalid acts and conduct did not affect him, but were directed only against the rightful owner and possessor, and that since no rights of the defendant were invaded thereby, he possessed no grounds for objection to the search. Some of the many domestic cases so holding are the Wax case, supra; Anderson v. Commonwealth, 204 Ky. 486, 264 S. W. 1087; and Buchanan v. Commonwealth, 210 Ky. 364, 275 S. W. 878.

Whether or not the legal actual consent of the representative of the defendant whom the searcher found on the premises would in every instance create imputed consent by defendant, regardless of the relationship of their occupancy and rights in and to the premises or things searched, is a question that is not presented in this case, and the discussion of which will not be undertaken. It is sufficient to say that the testimony in this case shows the relationship between defendants and their father of landlord and tenant, and that the parents of defendants, under some sort of mutual arrangement, were living with them in the old family home, the management and control of which had been given to defendants. They, therefore, had such possession and proprietary interest in the

buildings searched on the occasion complained of as to require that, in the absence of a search warrant, the premises could not be legally searched without their actual or imputed consent. The only agent or representative through and by which any sort of consent on the part of defendants was sought to be established was their father, who was found on the premises when the officers went there, and his actual consent to the search, if made by him, was only an imputed one by defendants.

It requires no citation of authority to show that legal "consent" is an act of volition and requires sufficient intelligence and mentality to enable the one consenting to appreciate the facts and circumstances, as well as the consequences of his act and to which he understandingly agreed. Outward consent by an infant so young and immature in mind and intelligence as to be incapable of appreciating or fully realizing what he was doing would clearly be no consent at all, and there can be no difference between the want of mental capacity of an infant in such case and the same lack of capacity in an adult, when the latter from any cause is bereft of reason, understanding, and appreciation. According to the evidence of the physicians introduced by the defendants at the trial of this case, and all of which the court excluded, the essential imputed consent upon which the commonwealth relied at the trial of this case, and also on this appeal, was given only by the father of the defendants, whose mentality at the time was so impaired (according to the excluded testimony) as to render his outward consent of no effect, and if true the search made by the officers was illegal, since they had no search warrant and the only fact relied upon as a waiver of, or in avoidance thereof, was ineffectual for that purpose. Grounds (1) and (2) are bottomed on the incompetency of the guilty facts discovered by the search, and, since that question depended on the relied on consent to the search by the father of defendants (which was an issuable fact to be submitted to the jury as hereinafter pointed out), neither of them may be considered as reversible errors.

In the recent case of Billings v. Commonwealth, 223 Ky. 381, 3 S. W. (2d) 770, we held that in cases where similar "preliminary questions of fact in determining the admissibility of evidence" are involved, it was the duty of the court to appropriately instruct the jury with

reference thereto, and to say to it, in substance, that it might consider the testimony upon the issue of guilt or innocence of defendant, if it found from the evidence such preliminary question of fact in the way and manner that would render competent the testimony heard to prove guilt, but that if they found from the evidence contrary thereto, then it would be their duty to acquit defendant, if such conditionally competent testimony furnished the only proof of guilt. We will not repeat the argument made in that opinion, nor restate the authorities upon which it was rested, but refer the reader to it for such information. The preliminary question in this case was and is: Whether defendants' father, at the time he gave his actual consent for the search, was or was not possessed of sufficient mental capacity to legally do do? If he was so possessed, then the discoveries made by the search would be competent, and could be considered by the jury, but, if he was not, then an instruction entitling defendant to an acquittal should have gone, because there was no other evidence upon which to sustain the conviction. The error relied on in ground (3) is meritorious, and is sustained.

It might not be amiss to add that it is with some reluctance that we find ourselves compelled to reverse the judgment, since there was abundant evidence to establish the defendants' guilt; but it is the duty of courts and officers to obey and observe mandatory requirements of the Constitution, and there is no provision in it more sacred to the individual, nor which the founders of our constitutional form of government more highly cherished, or for which they more strenuously contended, than the one upholding the right of the people to security "in their persons, houses, papers and possessions from unreasonable search and seizure," and which is contained in section 10 of our Constitution. Greater benefits will follow a strict adherence thereto than would result in a disregard thereof in order to convict an occasional isolated defendant who has committed some statutory or common-law offense. But, if that were not true, it would still be our bounden duty to uphold the constitutional rights of the people, although the consequence might be that a guilty offender would escape punishment, and, if searching officers would appreciate such facts, and resolutely determine to obey the mandates of the Constitution, we would not be confronted with such unpleasant

tasks, nor would the punishment of the guilty be hindered, since the procedure by which search warrants are obtanied is plain, easily accessible, and simple in requirements.

For the reasons stated, the motion for the appeal is sustained and the judgment is reversed, with directions to set it aside and to grant a new trial, and for proceedings consistent with this opinion.