## Carter v. Commonwealth.

(Decided June 6, 1930.)

LETCHER SAUNDERS for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

At its March term, 1930, the grand jury of Jessamine county returned an indictment against Edgar Carter for the crime of unlawfully and feloniously possessing intoxicating liquor, and it was charged in the indictment that on September 18, 1929, he had been convicted of a like offense, and his punishment fixed at a fine of $200 and confinement in jail for a period of thirty days. On the trial of the case he was found guilty, and his punishment fixed at two years' confinement in the penitentiary, his previous conviction having been shown on the trial. He appeals.

The facts shown by the proof are these: Arthur House owns a farm in Jessamine county. On the back

end of his farm there was an old tenant house which was vacant; he had not rented it to anybody. On January 30, 1930, House, in going after some cows, passed near this house and smelled mash there. He then went to the county seat and told the sheriff, requesting him to come down and get it off his place. The sheriff and a deputy, at his request, accompanied him home, and when they got there he showed them the house and told them to search it. As the officers got to the house, Edgar Carter, who was within, started to run to the window on the opposite side of the house and jump out, but one of the officers got there in time to stop him. He then said to the officer, "It's hell to be caught with the first run," and also told the officer that he had just been firing and had sat down just before they came. The still was in operation. Roger Preston, who was also in the room, was catching the whisky in a cup as it ran out of the still. There were three gallons of whisky in the room. The officers had no search warrant; they were acting at the request of House. It is insisted for appellant that all the evidence was incompetent, because it was obtained by an illegal search. But the constitutional provision against unreasonable searches only applies to the rightful owners of property or persons rightfully in possession. It was not designed to protect willful trespassers on the property of another. Neither Carter nor Preston had any right to be in the house. They were simply trespassers, and when House requested the officer to search his house there was no need for them to get out a search warrant. In Gray v. Com., 198 Ky. 610, 249 S. W. 769, the appellant lived with his mother. She requested the officers to make a search of the house, and it was held that the search made at her request was legal. To the same effect, see Banks v. Com., 190 Ky. 330, 227 S. W. 455; Bruner v. Com., 192 Ky. 386, 233 S. W. 795, and Richardson v. Com., 205 Ky. 434, 266 S. W. 1.

It was House's property. He had the right to enter. The trespassers could not complain of his entry, and the officers entering by his direction had all the rights he had. The circuit court therefore properly held the evidence competent.

Appellant also complains in his brief that the warrant for his arrest was illegally issued. But he was in fact tried under the indictment, and whether the warrant under which he was arrested was legal or not was not material, as he was in court and was tried without objec-

tion. Besides there is no evidence in the record that the warrant of arrest was improperly issued. In fact, as the offense was committed in the presence of the sheriff, he had a right to arrest the defendant without a warrant.

There is no exception to the instructions given by the court, and they were not complained of in the grounds for new trial, and are not complained of in the brief in this court.

The defendant testified that he was passing the house, and, seeing Preston there, simply dropped in to speak to him, and had been there only about ten minutes when the officers came. On the other hand, Preston testified that he and Carter were running the still jointly; that Carter was doing the firing; and that he was catching the liquor. As they were both in the room and the three gallons of liquor were there, there was sufficient evidence that Preston was in possession of the liquor no less than Carter. His testimony as to being there only casually is contradicted by his statements to the officers when he was arrested. Those statements fully sustain Preston's testimony, as well as the conduct of Carter, when he saw the officers coming, in attempting to go to the window and jump out on the other side. The verdict of the jury is not against the evidence.

Judgment affirmed.