**Cecil LANE, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 25, 1964.

Rehearing Denied March 5, 1965.

Claude Asbury, Catlettsburg, for appellant.

Robert F. Matthews, Jr., Atty. Gen., David Murrell, Asst. Atty. Gen., for appellee.

MOREMEN, Judge.

Appellant, Cecil Lane, was arrested in Boyd County by a state trooper for improper passing in an automobile on a public highway. He had no operator's license. The car was registered in his wife's name. The trooper, after arrest, searched his person and placed him in a police cruiser which was parked close to Lane's car. The officer called police barracks and requested a wrecker. He conversed with Lane for a few minutes and then returned to Lane's car and searched it. He found about seven cases of whiskey in the trunk of the car. All of this occurred in dry local option territory. Appellant was indicted for the offense of transporting alcoholic beverages for the purpose of sale in dry territory, (KRS 242.230).

At the trial appellant moved to suppress all evidence obtained as a result of the search of the automobile on the ground that the search was illegal. The court overruled that motion. Appellant was convicted.

The facts of this case present two questions: (1) Does the arrest for a traffic violation give the officer a right to search the automobile without a search warrant? (2) May only the owner object to a search?

This Court, on many occasions, has examined the facts of particular cases in order to determine whether the search was illegal. The theory expressed in each opinion is not always the same and we believe it necessary to re-examine this doctrine in view of the fact that there appears to be danger in granting an excessively broad scope of search and seizure powers after an arrest for minor, and sometimes innocuous, traffic violations.

In recent years, in order to meet modern conditions, the powers of various police forces to stop motorists on the highway have been extended. At the same time it may be necessary to restrict the powers of search and seizure without warrant which have heretofore existed. For in-

stance, in Commonwealth v. Mitchell, Ky., 355 S.W.2d 686 (1962), it was held that the action of police officers in setting up a road block for motor vehicles for the purpose of requiring drivers to display operators' licenses is not an unlawful arrest or restraint or an illegal search contrary to the constitution. It is interesting to note, however, that the opinion contains this language:

"Let it be emphasized that we are dealing here with systematic and indiscriminate stopping of all motor traffic on the highway for the good faith purpose of making inspections of drivers' licenses. Our decision may not be regarded as sanctioning the stopping of cars for the ostensible or pretended purpose stated when in reality it is actuated by an ulterior motive not related to the licensing requirement, or is done as a pretext or as a subterfuge for circumventing the constitutional provision against searches of persons and property without a valid warrant. We shall. continue to condemn such an act. See 5 A, Am.Jur., Automobiles and Highway Traffic § 134; Cox v. State, 181 Tenn. 344, 181 S.W.2d 338, 154 A.L.R. 809."

Our leading case on the subject of search and seizure is Youman v. Commonwealth, 189 Ky. 152, 224 S.W. 860, 13 A.L.R. 1303 (1920) which contains this statement:

"And this broad protection against unlawful search and seizure applies with equal force to the person, and, subject to the exception that an arresting officer has the right to search the person of a prisoner lawfully arrested and take from his person and hold for the disposition of the court any property connected with the offense for which he is arrested that may be used as evidence against him, or any weapon or thing that might enable the prisoner to escape or do some act of violence, it is as great a violation of the Constitution for an officer to search a person or baggage carried about by him, without a warrant authorizing it, as it is to search his premises."

We believe no one will deny the logic of the exceptions above noted. Hard reality demands that the person in custody be disarmed in order to protect the officer from harm, to prevent the escape of the arrestee, or the destruction of evidence which pertains to the offense for which he was detained. Let us remembr that both the 4th Amendment to the Constitution of the United States, and § 10 of The Kentucky constitution protect only the right of the people to be secure in their persons, houses, papers, and effects from *unreasonable* search and seizure, and exceptions above noted are based on sound reason.

■ It is our opinion that when a person is arrested for a traffic or other minor violation, the mere fact of the arrest does not give to the officer absolute right to search the vehicle or the premises indiscriminately. It would be impossible to lay down a rule which would apply to all conditions and all states of facts and this opinion should not be construed to mean that a person in custody may not be searched in order to be disarmed, or to prevent escape or the immediate destruction of evidence for which he was detained.

■ The case at bar did not offer facts of an extreme emergency. Appellant had been arrested, searched and placed in another car. If the arresting officer was interested in a search of the automobile, he might have obtained, upon proper ground, a search warrant.

Fundamental principles are not difficult to announce or apply in the first cases that appear before a court, but with each succeeding case, as variations and sometimes exceptions are made from the principles, the rules progressively become weakened by their application to diverse states of facts.

We have had this trouble in connection with cases involving the question of whether permission for the search has been given, either actual or implied. In Gilliland v. Commonwealth, 224 Ky. 453, 6 S.W.2d 467 (1928) where a search of the premises was made without an arrest, the facts did not involve strictly a search after an arrest, but this case has often been cited and used as precedent for the proposition that no one may object to a search if he is not the owner of the property searched. In that case the appellants were both adults and lived upon premises owned by their father. About two years before the search the father was stricken with paralysis and from then on the sons were in actual management and control of the farm premises owned by their father. The opinion discusses several theories, but seems to turn upon the fact that consent for the search by the father was not actually given because he was mentally incompetent and the judgment of conviction of the sons was reversed. The whole import of the opinion seems to be that since the sons were in actual management and control of the farm a search without their consent or some consent that could be imputed to them was illegal. Yet this case has been used as precedent for the proposition that only the owner may object to a search of property.

In West v. Commonwealth, 273 Ky. 779, 117 S.W.2d 998 (1938) after a chicken theft the officers approached a parked car belonging to Rex Walls, and occupied by him and Mark West. After the arrest, the officers heard chickens squawking in the rear of the car and, without a search warrant, opened the lid of the trunk and found them. On the trial of West, it was contended that this was an illegal search. The court disposed of that contention by saying: "In any event the evidence was competent as to appellant (West), since he was not the owner of the car which he claims was illegally searched." The Gilliland case was asserted as authority for that statement.

We perpetuated this theory in Pruitt v. Commonwealth, Ky., 286 S.W.2d 551 (1956) where we said:

"Another sufficient reason why the appellant cannot raise any valid constitutional grounds against the search of the automobile is because it was not shown that he was the owner of the car. Appellant did not testify during trial, nor was it otherwise shown that he was the owner of the automobile which he claims was illegally searched. See West v. Commonwealth, 273 Ky. 779, 117 S.W.2d 998; Gilliland v. Commonwealth, 224 Ky. 453, 6 S.W.2d 467."

The Pruitt case was cited with approval in Combs v. Commonwealth, Ky., 341 S.W. 2d 774 (1961) and the Combs case was cited in Smith v. Commonwealth, Ky., 375 S.W. 2d 242 (1964). Perhaps the last time this question was discussed by the Court was in Brown v. Commonwealth, Ky., 378 S.W. 2d 608 (1964) where it was said:

"The last point raised is that the search of the automobile was illegal. Although, as heretofore indicated, Brown was driving the car at the time, he was not its owner. Kenneth Locke had borrowed the car for the trip and, as he was in charge of it, he appears to have been the only person, if any, who could have complained of an illegal search; and the record does not reveal that Locke objected to the search of the automobile.

"This Court has held in a long line of cases that an automobile guest, and such was Brown, is not in a position to object to the search of such a vehicle without a warrant. See Smith v. Commonwealth, Ky., 375 S.W.2d 242; Combs v. Commonwealth, Ky., 341 S.W.2d 774; Pruitt v. Commonwealth, Ky., 286 S.W.2d 551."

We will not attempt to discuss all cases which were based upon the idea that anyone who was not owner of the property

was not in a position to object to its search. The opinions which followed the Gilliland case each time became more positive in the assertion that only an owner was entitled to object to the search, but in the Gilliland case where the search was held illegal, the sons were not the owners, but had obtained a proprietary interest in the farm because they managed it. This case has been continuously cited in support of a proposition—that only an owner may object—which it did not announce.

We believe this is a fit time to re-examine the question, since in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081, 84 A.L.R.2d 933 (1961) the right of privacy set forth in the 4th Amendment to the U.S. Constitution has been declared enforceable against the states through the due process clause of the 14th Amendment. In Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 233 (1960) the Court thoroughly examined the question of the amount of interest a person must have in the premises or other possessions before he is in a position to object to a seizure, and subsequently have the evidence obtained suppressed by proper motion. After discussion of the special problems that had arisen in the past concerning distinctions among various classes of owners, and in some instances proprietors of property, the Court concluded that it was unnecessary and ill-advised to import into the law of the right to be free from unreasonable search and seizure, "subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical." The Court said:

"No just interest of the Government in the effective and rigorous enforcement of the criminal law will be hampered by recognizing that anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. This would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched. As petitioner's testimony established Evans' consent to his presence in the apartment, he was entitled to have the merits of his motion to suppress adjudicated."

█ When we return to the facts of the instant case we find that appellant, Cecil Lane, was in complete control and possession of the car searched. There is some secondary proof in the record that the car was registered in his wife's name, but this proof does not have the high quality of primary evidence. We have concluded therefore that his interest was such that even though he was not the owner, he was entitled to have the evidence obtained by reason of the search suppressed.

█ The Supreme Court of Wisconsin, in a recent case (Barnes v. State, 25 Wis. 2d 116, 130 N.W.2d 264, October 6, 1964) reached the same conclusion in the points at issue that we have. It also commented upon a problem which has long disturbed lawyers. It said:

"While defendant conceded the lawfulness of the arrest, we deem it advisable to add the observation that the type of search here conducted raises a strong suspicion that the original arrest for the minor traffic offense committed was but a pretext to search defendant for narcotics. Cf. Taglavore v. United States (9th Cir.1961) 291 F.2d 262, 265. As the United States supreme court declared in United States v. Lefkowitz (1932) 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877. 'An arrest may not be used as a pretext to search for evidence.' "

We agree.

Judgment reversed.