**UNITED STATES v. LERNER.**

No. 19261.

District Court, D. Maryland.

Oct. 16, 1940.

Bernard J. Flynn, U. S. Atty., and Anthony Purcell, Asst. U. S. Atty., both of Baltimore, Md., for plaintiff.

Simon E. Sobeloff, of Baltimore, Md., for defendant.

CHESNUT, District Judge.

The indictment in this case contains two counts, the first charging unlawful and felonious possession of 120 gallons of untax-paid whiskey on or about February 29, 1940 in Baltimore City. This count is based on 26 U.S.C.A. Internal Revenue Code, § 2803. The second count charged the unlawful and felonious removal and concealment ·of 50 gallons of untax-paid whiskey at the same time and place, being an alleged violation of 26 U.S.C.A. Internal Revenue Code, § 2913. By stipulation of counsel the case has been tried before the court without a jury, as the question involved is one of law with no material controversy as to the facts. They are as follows:

Two agents of the Alcohol Tax Unit had information that a particular automobile with Maryland license No. 152,208 would deliver a load of untax-paid whiskey at a certain place in mid-town Baltimore City at about a certain time on February 29, 1940. They also had information that the automobile would be "loaded" at a particular house, 3416 Cottage Avenue, in Baltimore City. This is in the Park Heights Avenue neighborhood some miles from the anticipated delivery point. The agents were also informed that the latter place was the residence of some members of a family named Lerner who were reputed to be bootleggers. After the agents had waited for some time at the alleged delivery place without seeing the automobile, they went to the alleged loading place about 6 o'clock P. M., on February 29th. This was an ordinary city dwelling house with a garage in the rear on a public alleyway. On passing the front of the house the agents saw the suspected automobile parked there. They anticipated that it would shortly be loaded at the garage in the rear and they proceeded to an observation point in the alleyway in the rear of the house where they could watch the garage. It was, however, practically dark at that time. After waiting and watching for about fifteen minutes they saw a car resembling the suspected one come down the alley and enter the garage, and shortly later they heard sounds in the garage, the door of which was open, from which they inferred that the automobile was being loaded with liquor. The automobile in question was a Chevrolet sedan with seats for four or five passengers and it subsequently developed that a side door of the automobile had been opened and the liquor was being loaded on the floor of the car between the two seats. The agents approached closer to the garage and both turned on flash lights by means of which they were able to see somewhat indistinctly the form of a man placing in the automobile a parcel in newspaper but in the shape of a five-gallon can, which has a characteristic form and shape well known to agents of the Alcohol Tax Unit to be used in transportation of untax-paid liquor. While still in the alleyway and before entering the garage they announced to this man that they were "federal officers", whereupon he immediately fled through the door in the rear of the garage and along an areaway of about 28 feet in length leading to a rear door of the house, which he entered. The agents pursued him, noticing that on the way one five-gallon can apparently thrown away in his flight by the man pursued. When the man pursued entered the house the door was attempted to be closed behind him, but the agents pressed their weight against the door and succeeded in entering just as the man was running up the back steps from the cellar of the house to the floor above. One of the agents pursued the man up the

steps. The other remained in the cellar which was fully lighted. There were two men in the cellar at the time, who had evidently been holding the door. One was the defendant Harry Lerner, and the other his father, Joseph Lerner. The identity of the third man who fled from the garage and through the house has not been disclosed.

The agent who remained in the cellar immediately noticed the presence of a large number of five-gallon cans of the kind above referred to, which did not contain tax stamps. He informed the two men in the cellar that they were under arrest. Thereupon some conversation ensued for over a space of ten or fifteen minutes, during which the defendant, Harry Lerner, informed the agents that the liquor, which was untax-paid, both in the cellar and in the automobile, belonged to him and that the automobile also belonged to him although registered for his convenience in another name, and that he had partially loaded the automobile. One of the agents asked the defendant to accompany him out to the automobile in the garage, to which the reply was made that he would do so after a while. In the meantime some one had telephoned to the defendant's attorney (not the trial counsel) who promptly appeared and some part of the above recited conversation and admissions by the defendant were made in the presence of the attorney. There was no express protest made against the arrest or seizure of the untax-paid liquor either in the house or in the automobile except the question was asked as to what right the agents had in coming into the house without a search warrant. The defendant was then taken into custody by the agents and the automobile was also seized. The quantity of untax-paid whiskey in the house was about seventy gallons, and about fifty gallons in the automobile.

On this evidence, given by the Government's agents, there being no testimony offered for the defendant, counsel for the latter has asked that a verdict be directed for the defendant on the ground of lack of any sufficient legal evidence to justify a conviction on either count of the indictment. In due time before the trial of the case a motion was made to suppress the evidence which was overruled at the time without prejudice to its being renewed at the trial; and motions are now made to strike out the evidence furnished by the seizure of the untax-paid liquor both in the house and in the automobile, and the admissions of the defendant as to its ownership and possession. The defendant's contention is that the seizure of the untax-paid whiskey both in the automobile and in the house was illegal under the Fourth Amendment, because it is said the agents had no probable cause for the attempted arrest of the man in the garage and therefore no right to pursue him into the cellar of the defendant's home.

Questions similar to the one now presented were quite frequent during the period of National Prohibition and there are many court decisions thereon. During that period the mere possession of whiskey was, with a few exceptions, illegal under the federal law; but now the crime charged is not the possession of whiskey as such, but of *untax-paid* whiskey. Nevertheless the general principles applicable to arrest and search and seizure still remain applicable. The question in each case, dependent upon its own particular facts and circumstances, is whether the arresting officer was acting upon reasonable grounds or probable cause. The Fourth Amendment which prohibits unreasonable searches and seizure does not forbid arrests without warrants by duly authorized officers of the law where misdemeanors are committed, in their presence, or where they have reasonable grounds for belief in the commission of a felony by the person arrested. And the particular offense charged in this indictment is, in the federal law, of the grade of felony. Here there is no doubt that a felony was in fact being committed in the presence of the officers. The whiskey in the car in the garage and the automobile itself were subject to seizure and forfeiture, if the legal procedure was proper. 26 U.S.C.A. Int.Rev.Code, §§ 2803(f), 3321(b) (3), 3720. The officers had no search warrant, but this was unnecessary if they were justified in making or attempting to make the arrest, and what they discovered in the course of so doing was merely incidental. The law on this subject was recently reviewed at some length in this court in the case of United States v. Sam Chin, D.C., 24 F.Supp. 14, 16. If the officers had probable cause for attempting to arrest the man in the garage, they had the right to pursue him into the adjoining house without a search warrant or a warrant of arrest. United States v. Dean, D.C., 50 F.2d 905; 6 C.J.S., Arrest, § 14, p. 615; Brooks v. Commonwealth, 61 Pa. 352, 358, 100 Am.Dec. 645.

The critical question then is whether the officers had reasonable grounds for attempting to make the arrest in this case.

■ While the case is not free from all doubt I have, after some extended consideration, reached the conclusion that there was probable cause for the arrest. The officers had definite information with respect to the activities of this particular automobile in the transportation of untaxpaid liquor. The circumstances under which they saw the automobile in the garage and what they thereafter observed tended to confirm the specific information they had received. It is true the automobile was in a private garage but the doors were open on a public alley, and at the time the officers were not trespassers upon private premises. It is also true that before the officers entered the garage they could not have positively known that what was being loaded into the car, and was afterwards found there, was untaxpaid liquor; but, with the information they had and the confirmatory things they saw and heard, they had what was at least a definite suspicion that a felony was being committed in their presence. It may still be doubted whether up to this point they had sufficient grounds for then and there making the arrest, or entering the garage and searching the car, without an arrest, although the circumstances are not very dissimilar to those which were held to justify the search of an automobile, under the National Prohibition Law, 27 U.S.C.A. § 1 et seq. in Carroll v. United States, 267 U.S. 132, 160, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; and in two cases in this Circuit cited with approval by Chief Justice Taft at page 159 of 267 U.S. at page 287 of 45 S.Ct., Ash v. United States, 299 F. 277, and Milam v. United States, 296 F. 629; and the facts are still closer to a like decision in this Circuit in Fisher v. United States, 46 F.2d 994. See, also, Benton v. United States, 4 Cir., 28 F.2d 695. It is properly pointed out that these decisions were under the National Prohibition Act, and that in a number of cases decided under the present Internal Revenue Acts relating to the taxation of liquor, federal revenue agents before making an arrest or a search without a warrant, must have some evidence that the suspected contraband liquor is in fact untax-paid; and that the mere smell or odor of whiskey is of itself not sufficient. United States v. Kind, 2 Cir., 87 F.2d 315; United States v. Kaplan, 2 Cir., 89 F.2d 869; Leubbert v. United States, 8 Cir., 74 F.2d 357; Ray v. United States, 5 Cir., 84 F.2d 654; United States v. Alspach, D.C., 12 F.Supp. 293. Cf. United States v. One 1937 Model Studebaker, 10 Cir., 96 F.2d 104.

But if it be conceded that the officers could not properly have searched the automobile or arrested the man in the garage merely on the basis of their information and observation up to the point where they announced that they were "federal officers", the action of the man immediately thereupon in his flight and apparently throwing away the five-gallon can was a prominent and decisive additional circumstance which I think justified the pursuit and attempted arrest. Flight is at least very suggestive of guilt. Of course it is by no means conclusive, and may well be explained as consistent with innocence at a trial on the merits. But the point here is whether, in addition to all the other circumstances, it was of itself so highly suspicious as to justify the officers in acting. I think it was.

■ In entering the house the officers were therefore not trespassers, and under the circumstances their entry was not illegal and not in violation of the Fourth Amendment. Indeed they made no search of the defendant's premises because immediately upon their entry the evidence of the violation was conspicuous before their eyes. Nor is there any evidence in this case that the subsequent admission by the defendant of his ownership of the untaxpaid liquor was other than voluntary on his part. If the entry had been illegal a different question would have been presented as to the admissibility of the defendant's statements. See United States v. Setaro, D.C.Conn., 37 F.2d 134; Gorman v. State, 161 Md. 700, 158 A. 903.

In determining the sufficiency of reasonable or probable cause in relation to arrests by officers of the law, there seems to be a tendency to confusion of thought if the arrest is for a liquor violation instead of for some other criminal act. Thus if the suspected crime had been one of burglary there would seem no reasonable doubt that the officers under similar circumstances would have been justified in attempting to arrest the man in the garage. Thus, if the officers had not been federal agents but city policemen who had been told that a burglary had probably been recently committed in the Lerner house, and

had found a man leaving the house with a suspicious looking package, it would not be thought that the officers were acting without justification in stopping and questioning the man as to the contents of the bag or package he was carrying; and if thereupon the man dropped the package and ran away, it would be common legal thought that the officers would be justified in pursuing and arresting him; and if he had fled back into the house they could have properly pursued him there; and if, on entering the house, they found another crime being committed in their presence they would clearly have been justified in making the arrest therefor.

I therefore conclude that the motion for a directed verdict and the related motions to suppress or exclude evidence must be overruled, with exceptions noted for the defendant.