## Cox *v.* State.

### (*Nashville*, December Term, 1943.)

Opinion filed June 10, 1944.

D. N. Hester, of Gallatin, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, for the State.

Mr. Justice Prewitt delivered the opinion of the Court.

The defendant below, Charlie Cox, was found guilty. of the unlawful possession of whisky with punishment fixed at a fine of $100.

The complaint made here is that the search was unlawful, that the officers making the arrest had no search warrant, and that the facts of the case did not justify them in arresting the defendant on the occasion complained of without a search warrant.

The only witnesses who testified in the case were C. A. Cartwright and J. C. Harris, highway patrolmen. These witnesses stated that the defendant was thought to have been selling whisky in Gallatin and Sumner County during the months of September, October and November, 1942. This is the last complaint the officers testified about. On the day in question, March 13, 1943, the patrolmen testified that they were in Davidson County and saw an automobile which they thought belonged to another person and followed it across the Davidson County line over into Sumner County, where the possession and transportation of whisky is unlawful. The patrolmen approached defendant's car from the rear and drove around in front of him and told him to stop his car. Thereupon the two officers walked back to the defendant's car and asked for his driver's license. When they had gotten up close to the car they saw a sack on the front seat by the side of the defendant, who was driving his automobile, and they testified that upon seeing this sack they also saw the necks of some whisky bottles. After the whisky was discovered they arrested the defendant.

The State concedes that the conviction cannot be sustained upon the information the patrolmen had as to what occurred in the fall of 1942, but insists that the Legislature having authorized State Highway Patrolmen to make inspections of driver's lisenses, that these in-

spections could be made at will and without assigning any reason therefor. It is contended by the State that if the officers could lawfully halt the car, then the use of their eyes to see this whisky on the seat would not constitute a search within the meaning of that term. *Smith* v. *State*, 155 Tenn., 40, 290 S. W., 4; *Massa* v. *State*, 159 Tenn., 428, 19 S. W. (2d), 248.; *Elliott et ux.* v. *State*, 173 Tenn., 203, 116 S. W. (2d), 1009.

In *Smith* v. *State*, *supra*, it was held that an inspection by a police officer at night with the aid of a flashlight of an automobile parked in a dark alleyway, not in front of a house, disclosing its condition and unconcealed contents, vessels containing intoxicating liquors, was not unreasonable. A conviction was upheld in that case upon the testimony of the officer alone, supported by the production of the whisky so discovered, and this was held sufficient to sustain a conviction for the unlawful possession and transportation of intoxicating liquor.

In *Massa* v. *State*, *supra*, it was held that fumes of liquor in the process of manufacture coming from a certain building was held to justify the conclusion by the officer that an offense was being committed in his presence and to authorize a search of the building without a warrant. See *McBride* v. *United States* (5 Cir.), 284 F., 416, and *Patmore* v. *State*, 152 Tenn., 281, 277 S. W., 892.

In *Elliott et ux.* v. *State*, *supra*, it was held that highway patrol officers who arrested the defendants for the reckless driving of an automobile were without authority to search the trunk of the car where intoxicating liquor was found. In that case it was held that a "search" is an examination of a man's home, premises or person for the purpose of discovering proof of his guilt in relation to some crime or misdemeanor of which he is accused.

■ Section 8 of Chapter 90 of the Public Acts of 1937 requires that every operator of a motor vehicle shall have in his possession his driver's license while so operating his vehicle and shall exhibit it upon demand of any State Highway Patrolman. This unrestricted right to demand an exhibition of a license is confined to State Highway Patrolmen. Under this provision these Patrolmen are empowered under the law at any time to stop a car and require an exhibition of the driver's license.

■ There can be no doubt in this case but that in stopping the defendant's car and asking for his driver's license the Highway Patrolmen were primarily actuated by a desire to see if they could detect any evidence of intoxicating liquor being transported in the car of the defendant. This appears from the fact that they waited until the defendant had reached Sumner County before stopping him.

The assistant attorney general stated in argument that these circumstances showed that the officers stopping the defendant had no concern whatever about his driver's license, but he was put under restraint for the purpose of discovering whisky or other intoxicating liquors in his car and, in fact, these officers thought that the defendant was another person.

We are unwilling to sanction this conduct. The arrest was a mere subterfuge. There was no threatened breach of the peace, and the effect of defendant's apprehension was to require him to give evidence against himself, and therefore violated his constitutional rights.

It results that the judgment of the lower court will be reversed and the case remanded for a new trial.

Mr. Justice Neil (concurring).

While I fully agree with the contention of the able Assistant Attorney-General that a State Highway Patrolman may at any time stop the driver of an automobile for the purpose of examining his driver's license, I am constrained to hold that he cannot do so as a mere pretense in order to search the automobile for whiskey or any other contraband article. It clearly appears from Code, section 2715(22), that all peace officers other than Highway Patrolmen have no authority to stop an automobile to examine a driver's license except where such driver has violated a state law or municipal ordinance. The exceptional authority conferred upon Highway Patrolmen was due to the fact that their chief duty was to enforce the traffic laws and ordinances in order to promote the safety of the traveling public. The statutes certainly did not contemplate conferring this authority upon them to enable them to circumvent the constitutional provision against searches of the person and property of a citizen without a valid search warrant. If this conviction should be sustained, every Highway Patrolman in the State would at once construe it to mean that he had full authority to search an automobile anywhere and at any time without a search warrant. Such a holding would abrogate the constitutional inhibition against unlawful searches and seizures insofar as it applies to Highway Patrolmen. In order for a search to be lawful, when the Patrolman stops a car to examine a driver's license, it should be made to appear that the examination is made in good faith and not as a mere blind or an excuse for a failure to procure a valid search warrant.