80 So.2d 694 (1955)
Travis Albert BYRD, Jr., Appellant,
v.
The STATE of Florida, Appellee.
Supreme Court of Florida. En Banc.
April 29, 1955.
Rehearing Denied June 3, 1955.
*695 A.K. Black, Lake City, for appellant.
Richard W. Ervin, Atty. Gen., and Moie J.L. Tendrich, Asst. Atty. Gen., for appellee.
HOBSON, Justice.
Appellant, Travis Albert Byrd, Jr., was convicted of removing, depositing and concealing a quantity of a taxable intoxicating beverage upon which the tax had not been paid, with intent to defraud the State of Florida.
The only question we consider it necessary to answer is whether the trial court erred in refusing to suppress evidence consisting of whiskey and containers obtained by the sheriff as the result of what appellant contends was an unreasonable search and seizure.
There is no real dispute as to the material facts bearing upon this issue. At least as early as 5:30 a.m. of the day the questioned search was made, the sheriff received information that a truck driven by the appellant was loaded with moonshine whiskey. The Sheriff thereupon began to keep this truck under surveillance while it was parked at Foley Junction, which is just south of the Town of Perry, in Taylor County. Some effort was made to obtain a search warrant, but it is a fact that no search warrant was obtained.
At about 8:30 p.m. the truck pulled out from Foley Junction. About seven miles from Foley Junction, during the hours of darkness, while the truck was proceeding at a lawful speed and observing all of the rules of the road, it was stopped by the sheriff and his deputies. The sheriff testified that while he was following the truck, "it was driving along slow, about twenty or twenty-five miles an hour, and very particular and very careful." After following the truck for some distance, the sheriff and his deputies "blinked our lights and turned the blinker on on top of my (the sheriff's) car, and the truck pulled over to the right of the road up there north of the Pines; pulled on the shoulder of the road." As to his reason for stopping the truck, the sheriff, with commendable candor, testified upon cross-examination as follows:
"Q. Why did you stop the automobile, Sheriff? A. The truck?
"Q. Yes, sir. A. Because I was informed it was loaded with moonshine whiskey.
"Q. And you stopped it for no other reason than that? A. That is all."
After the truck was stopped, the sheriff checked the driver's license of appellant and interrogated him as to the contents of the truck. Appellant averred that the truck contained shrubbery. Thereafter, the sheriff and others walked around the truck and, apparently with the aid of a flashlight or automobile lights, discovered dripping from a side door a substance which they then and there purported to identify as moonshine whiskey, whereupon they arrested and handcuffed the appellant, took keys from the truck's ignition, unlocked the back doors, searched the truck, and discovered the evidence sought to be suppressed. Appellant, after he was arrested, admitted that the truck contained whiskey. He resisted the search, however, saying there "wasn't nobody going in there without a search warrant," and standing against the doors of the *696 truck, but he was "turned around out of the way" and the doors were unlocked.
The trial court was of the opinion that the sheriff had a right to stop the truck for the purpose of ascertaining whether or not the driver was duly licensed. This is true, but it is not the case before us, since the sheriff did not stop the truck to check appellant's license, but "because (he) was informed it was loaded with moonshine whiskey." And the sheriff himself referred to the information on the basis of which he acted as a "tip".
We have repeatedly held that a minor traffic violation cannot be used as a pretext to stop a vehicle and search it for evidence of violation of other laws. Ippolito v. State, Fla., 80 So.2d 332; Collins v. State, Fla., 65 So.2d 61; Brown v. State, Fla., 62 So.2d 348; Graham v. State, Fla., 60 So.2d 186; Burley v. State, Fla., 59 So.2d 744. And courts adjudicating the question have also applied this rule to cases wherein the privilege of stopping vehicles to check licenses or conduct an inspection for minor defects in equipment was similarly abused. See, e.g., People v. Roache, 237 Mich. 215, 211 N.W. 742; Cox v. State, 181 Tenn. 344, 181 S.W.2d 338, 154 A.L.R. 809; Robertson v. State, 184 Tenn. 277, 198 S.W.2d 633; Graham v. State, 86 Okla. Cr. 9, 184 P.2d 984; and United States v. Bumbola, D.C., 23 F.2d 696. Since the sheriff could not have used the checking of appellant's license as a pretext to stop and search his vehicle, and since the avowed purpose of the sheriff in stopping the vehicle had no connection with appellant's license in any event, the trial court's reasoning upon this issue must necessarily fail.
In Collins v. State, Fla., 65 So.2d 61, speaking through Mr. Justice Thomas, we stated at pages 64-65:
"Putting together the decisions of the Supreme Court of the United States and the decisions of this court, which we think are harmonious, we reach the conclusion that it is safer procedure to secure a search warrant preliminary to stopping a motorist and searching his car; that if halting, searching and seizing are accomplished without such a warrant the officer must be prepared to show that he had `probable cause' for his acts or `reasonable belief' or `trustworthy information' that the car was engaged in the transportation of contraband."
The showing made in the instant case as to the state of the sheriff's information at the time he stopped the truck falls far short of compliance with the standards laid down in the Collins case. Since no "probable cause" existed, and the sheriff had no valid independent reason for stopping the truck, the appellant's "right to free passage without interruption or search" was violated in this case. This right was enunciated by Mr. Chief Justice Taft in Carroll v. United States, 267 U.S. 132, 153-154, 45 S.Ct. 280, 285, 69 L.Ed. 543, and the language of the opinion in that case is just as much the statutory law of Florida as if it had been written by our legislature. See Florida Statutes, § 933.19 F.S.A., and 24 F.S.A. pp. 217-218. See also Kersey v. State, Fla., 58 So.2d 155, 156, wherein we said, in an opinion by Mr. Justice Terrell:
"This court is committed to the doctrine that an officer without a search warrant or warrant of arrest, has no right to stop one on the public highway, particularly in the nighttime, and demand that he surrender what he has in his possession."
We turn next to consider the circumstance of whiskey dripping from the truck after it was stopped. This circumstance, although it may be isolated for purposes of discussion, should not and cannot be disassociated from the fact that the stopping of the truck for the reason assigned was illegal, because if we were to forget the unauthorized stopping we would have a different case than the one before us. There is at present no law against transporting whiskey on the highway. The possession of whiskey is not unlawful of itself, as is, for example, the possession of lottery materials. The case is thus distinguishable from such cases as Fletcher v. *697 State, Fla., 65 So.2d 845, where the occupant of a parked vehicle had lottery tickets and pads on the seat beside him and in plain view of the officers who arrested him. The law seeks to prevent the transportation of contraband whiskey, i.e., whiskey upon which the required tax has not been paid. And although the officers saw, tasted and smelled the substance dripping from appellant's truck and pronounced it to be whiskey, it is obvious that they could not identify it as contraband whiskey, because no one can discern the absence of a revenue stamp by such tests.
We think that Kraemer v. State, Fla., 60 So.2d 615, is close enough on its facts to the instant case to be controlling, when considered with the other cases we have cited. In the Kraemer case, after an illegal stopping of a vehicle on the basis of a "tip", the officer noticed a package in appellant's car, picked it up, and laid it back. Later, one of the appellants was seen attempting to push a package under the car with her foot. The package was seized, and when opened later at the police station was found to contain lottery materials. We were there constrained to hold that under the authorities there was no "probable cause" and no lawful arrest to which the search could have been incidental. We must make the same holding in the case now before us. It follows that the trial court erred in refusing to suppress the evidence obtained as a result of the unlawful search in this case.
We hold further that the State failed to show either at the hearing on petition for writ of habeas corpus or on motion to suppress the evidence, that the arresting officers had either "probable cause" for their acts or "trustworthy information" upon which to predicate "`reasonable belief' * * * that the car (truck) was engaged in the transportation of contraband." In view of this holding, it is unnecessary now to decide the question posed by the appellant herein as to whether the trial court erred in ruling that the sheriff was not required to furnish the name of the informer who had told him that appellant's truck contained moonshine whiskey.
In reaching our conclusion in this case, it is not our intention to suggest that when "probable cause" does exist an officer may not stop a vehicle. There are, moreover, many valid and legitimate reasons for stopping vehicles upon the highway, and we do not mean to cast a doubt upon such lawful procedure. What we do hold is that the appellant's constitutional rights have been violated in this case, and the fruits of such violation cannot be used against him.
Reversed and remanded.
MATHEWS, C.J., and TERRELL, THOMAS, SEBRING and DREW, JJ., concur.
ROBERTS, J., not participating.

On Petition for Rehearing
HOBSON, Justice.
In his petition for rehearing or modification of our opinion in this case, the Attorney General contends that we failed to consider our holdings in Brown v. State, 152 Fla. 853, 13 So.2d 458, and State v. Pridgen, 155 Fla. 31, 19 So.2d 510, 511, to the effect that moonshine whiskey is a beverage in respect to which no tax may be levied or collected. In the Brown and Pridgen cases the information used the term "moonshine whiskey" and alleged that it was a beverage upon which a tax was imposed by the Florida beverage laws. In each case we held that the indictment was insufficient to charge an offense, because, as we said in the Pridgen case, "[t]he condemnation by law for failure to comply with a tax law necessarily presupposes the sanction of law to pay the tax." In the subsequent case of Harris v. State, 160 Fla. 720, 36 So.2d 372, however, we held that an information omitting the term "moonshine whiskey" but referring to a beverage containing more than 3.2 percent of alcohol by weight "`in respect whereof a tax would be imposed if such beverage were manufactured in accordance *698 with'" the beverage laws was sufficient to charge an offense under F.S. § 562.32, F.S.A. Thus the principle of the Brown and Pridgen cases has become merely a technical rule of drafting, and such rule was complied with in the present case. The petitioner argues, however, that since it is not legally permissible for moonshine whiskey to have a revenue stamp, testimony that the whiskey dripping from the truck was "moonshine" constituted a proper basis for the search in this case. He cites People v. Flaczinski, 223 Mich. 650, 194 N.W. 566; State v. McGinnis, 320 Mo. 228, 7 S.W.2d 259; State v. Bunch, 333 Mo. 20, 62 S.W.2d 439; 33 C.J., page 773, Sec. 526; 48 C.J.S., Intoxicating Liquors, § 371; 23 C.J.S., Criminal Law, 865, p. 75; and Cornelius, Search & Seizure, 2nd Ed., Sec. 174 in support of the proposition that moonshine whiskey "has a peculiarly distinctive taste and odor and can be identified by such taste and odor." These authorities do indeed appear to support the point contended for. We are not, however, inclined to apply such a principle to the instant case, because we are not persuaded that any witness, no matter how skilled, can determine with any degree of accuracy whether whiskey dripping from a truck in the nighttime is legally or illegally made, and therefore taxable or untaxable.
The opinion in Atz v. Andrews, 84 Fla. 43, 94 So. 329, is perhaps closest to a declaration by this court upon the point involved. In that case, doubt was cast upon the ability of even an expert to detect the difference between liquors containing more or less than a specified percentage of alcohol, where the test was limited to taste and smell. (See, however, present F.S. § 562.47, F.S.A., allowing opinion evidence of the intoxicating nature of liquor.
We must again refer to the fact that appellant was charged with removing, depositing and concealing untaxpaid liquor. This is also an offense under federal law, and it has been distinguished from other federal liquor crimes in a way which is of significance here. Thus in United States v. Seiler, D.C.Md., 40 F. Supp. 895, 896, the court states:
"A distinction must be made between the sufficiency as probable cause of odors of whiskey in relation to the crime of possession of untaxpaid liquor, and the odor of whiskey mash in relation to the manufacture of liquor or the fermentation of mash for distillation or production of alcohol in a dwelling house. (Emphasis by the court.)
The court goes on to point out that the smell of whiskey or whiskey mash emanating from a dwelling house may constitute probable cause for a search in connection with the unlawful production of liquor therein, but that the smell of whiskey is not sufficient to constitute probable cause in connection with untaxpaid liquor. This distinction is extensively discussed by the same court in United States v. Lerner, D.C., 35 F. Supp. 271. See also United States v. Kind, 2 Cir., 87 F.2d 315, which we cited with approval in Brown v. State, Fla., 62 So.2d 348.
Although it is clear that this is a close and difficult case, its facts are such that we are not inclined to depart from our original conclusion that appellant's constitutional rights were violated by an unlawful stopping and search. It follows that the petition must be, and it is hereby, denied.
DREW, C.J., and TERRELL, THOMAS and SEBRING, JJ., concur.
ROBERTS, J., not participating.