MORGAN *v.* TOWN OF HEIDELBERG, MISSISSIPPI

No. 42600            March 11, 1963            150 So. 2d 512

*J. M. Travis,* Heidelberg, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Leroy Morgan, appellant, was convicted in the mayor's court, Town of Heidelberg, of carrying a concealed weapon. Miss. Code 1942, Rec., sec. 2079. He appealed, and on trial de novo he was again convicted, and sentenced to pay a fine.

Code section 2079 provides: "Any person who carries concealed, in whole or in part, any . . . pistol, . . . shall be guilty of a misdemeanor, . . ."

Section 2081 states that any person charged with a violation of section 2079 "may show as a defense:

    (a) That he was threatened, and had good and sufficient reason to apprehend a serious attack from any enemy, and that he did so apprehend; or

    (b) That he was traveling and was not a tramp, or was setting out on a journey and was not a tramp; . . ."

On the night of June 2, 1962, state highway patrolman Osborne was conducting, on a state highway at the edge of town, an examination of driver's licenses for operators of all motor vehicles on that road. Assisting him was a special policeman of the town. Brewer, an automobile mechanic, was riding that night with the patrolman, seeking the cause of some motor trouble in the patrol car. The roadblock, for examination of operator's licenses, began around eight o'clock that night. At 10:00 p.m. Morgan, the defendant, drove off a side

road and headed toward the roadblock about 200 yards away. It was close enough for him to see it. Osborne observed Morgan stop his car, look, back up and turn around, and begin to drive off from the roadblock. Since Morgan evaded inquiry about his driver's license, Osborn and Brewer got in the patrol car and followed him "a good piece." The red light on top of the patrol car was blinking and flashing as a signal to defendant to stop. Osborne drove up behind him, but Morgan still did not stop. He then drove ahead of him and signaled him to park.

The officer's sole purpose in stopping Morgan was to check his driver's license, which was what he had been doing with others for about two hours. Osborne walked to the driver's side, asked Morgan for his license, and, after some fumbling, he presented it to the officer. Because it was nighttime, and because of the suspicious circumstances and the need for precautions, Osborne handed Brewer another flashlight, and asked him to go to the other side of the car, to see if there was anyone else in it. Brewer went to the right side of defendant's car, shone a flashlight in it, and advised Osborne that Morgan had a gun. They saw a .38 caliber, loaded revolver, partly hid under Morgan's right leg, with the butt sticking out.

The patrolman told him to sit still, opened the door, reached over him and removed the gun. He made no search of the car, and did not look in the glove compartment, the trunk, under the seat or anywhere else. From what he observed of defendant's car and his driving of it, the patrolman concluded that Morgan did not want to come to the roadblock and have his driver's license checked. Brewer did not reach in, enter, or search the car in any way. When he shone the flashlight on the front seat, he saw part of the gun under Morgan's right leg. After that, Osborne arrested him on the present charge.

Appellant contends that the evidence (pistol) was secured without a search warrant, was obtained under an unreasonable and therefore unlawful search and seizure, and his objections to it should have been sustained. Miss. Const. 1890, sec. 23; U. S. Const., amend. IV.

Mississippi Code 1942, Rec., section 8101 provides that "said license must be an immediate possession of operator while he is in the act of driving."

Code section 8108 states: "Every licensee shall have his operator's license in his immediate possession at all times when operating a motor vehicle *and shall display the same, upon demand of a justice of the peace, a peace officer, or a field deputy or inspector of the Commissioner.* However, no person charged with violating this section shall be convicted if he produces in court an operator's license theretofore issued to him and valid at the time of his arrest." (Emphasis added).

These acts require the operator of a motor vehicle (a) to have his license in his possession when driving, and (b) to display it upon demand of a proper officer. These provisions are similar to those in a number of other states. 5A Am. Jur., Automobiles and Highway Traffic, sec. 134; 61 C.J.S., Motor Vehicles, sec. 651. **(Hn 1)** Section 8108 confines the right to demand exhibition of a driver's license to specified officers. By necessary implication, it empowers them to stop a car and require exhibition of the license, but this right of the officers must be exercised in good faith for the purpose of determining whether the operator has a driver's license. 60 C.J.S., Motor Vehicles, sec. 157; Cox v. State, 181 Tenn. 344, 181 S.W. 2d 338, 154 A.L.R. 809 (1944); Robertson v. State, 184 Tenn. 277, 198 S.W. 2d 633 (1947); Murphy v. State, 194 Tenn. 698, 254 S.W. 2d 979 (1953); Byrd v. Florida, 80 So. 2d 694 (Fla. 1955); cf. State of Ohio v. Farren, 140 Ohio St. 473, 45 N.E. 2d 413, 143 A.L.R. 1016 (1942). **(Hn 2)** Such statutes are held to be a valid and proper exercise of the police

power of the state. Anno., 143 A.L.R. 1019 (1943); Fisher, Vehicle Traffic Law (1961), pp. 375-377.

(Hn 3) However, this right to stop a motorist and require an exhibition of his operator's license must be exercised in good faith, and not as a blind or excuse for a failure to procure a valid search warrant. It must not be a subterfuge, and cannot be used as a device for evading the restrictions upon unreasonable searches and seizures. See Anno., Effect of Ulterior Motive of Official in Exercising Authority to Require Motorist to Exhibit Driver's License, 154 A.L.R. 812 (1945); Fisher, p. 376; Byrd v. Florida, 80 So. 2d 694 (Fla. 1955).

(Hn 4) The mere act of stopping cars and detaining drivers momentarily for the purpose of ascertaining whether they are duly licensed to operate a motor vehicle does not constitute an arrest. See Fisher, p. 375; People v. King, 175 Cal. App. 2d 386, 346 P. 2d 235, 238 (1959). (Hn 5) A license to operate a motor vehicle is a privilege granted by the state. In accepting the license, one must also accept all reasonable conditions imposed by the state in granting it. This includes, for example, a requirement of the procurement of liability insurance or the furnishing of other proof of financial responsibility. Morehead v. Miss. Safety-Responsibility Bureau, 232 Miss. 412, 99 So. 2d 446 (1958). Wasson v. City of Greenville, 123 Miss. 642, 86 So. 450 (1920), held that a municipal ordinance, requiring a showing of competency and a driver's license before operating a motor vehicle upon city streets, was a proper exercise of the police power for the protection of the public safety.

City of Miami v. Aronovitz, 114 So. 2d 784 (Fla. 1959), upheld the power of a municipal police department to operate a roadblock for the purpose of checking automobile driver's licenses. It was said that such a practice did not amount to an illegal search and seizure, contrary to the state and federal constitutions. The use of a road-

block for checking operator's licenses was a reasonable regulation for the protection of public safety, the enforcement of the revocation and suspension of licenses, and the exclusion of operators who have been proven to be negligent, incompetent, and a public hazard. It was lawfully directed toward the prevention of the negligent operation of automobiles and the imposition of requirements of competency on the part of drivers. In *Aronovitz*, the court noted that it was not passing upon the validity of a search of a vehicle which had been intercepted for the purpose of examining the driver's license. Byrd v. Florida, 80 So. 2d 694 (Fla. 1955), held such a search to be invalid, because stopping the truck was a pretext unrelated to the subject of the search. This is in accord with the Tennessee cases cited above.

In summary, the mere act of stopping cars and detaining drivers momentarily to ascertain whether they are duly licensed does not constitute an arrest. This may be done by properly constituted officers, under the authority of Code section 8108. Such a detention is not unlawful where it is done in good faith for that specific purpose. **(Hn 6)** However, when the officer's primary purpose in stopping the motorist is not to inspect his license, but to examine the contents of the vehicle, the detention is not in good faith for examination of the driver's license, but a mere subterfuge or excuse for a failure to procure a search warrant. If evidence is discovered under such circumstances, it is illegally obtained.

On the other hand, if the evidence is openly visible to the officer's eyes at the time he is examining the operator's license, where the vehicle was stopped in good faith for that purpose, for officer is not deprived of his power to make an arrest for a misdemeanor or other offense committed in his presence. Miss. Code 1942, Rec., sec. 2470; Fisher, pp. 375-377.

(Hn 7) In the instant case, it is undisputed that patrolman Osborne was making a good faith examination of driver's licenses in vehicles traversing the highway; that this roadblock for that purpose had been going on for two hours when defendant drove nearby in the direction of the roadblock, saw it, turned around, and attempted to avoid the license inspection. The officer followed Morgan for the purpose of examining his driver's license, as authorized by Code section 8108. Stopping him for that purpose, in good faith, did not constitute an arrest.

While examining the license, the officer and his assistant saw the partly concealed, loaded revolver under defendant's leg. In other words, they saw him committing a misdemeanor in their presence, without any invasion of his vehicle whatever. Since Morgan had tried to escape examination of his license, the officer had the right to follow him for that purpose, and, as a precaution, to have Brewer turn his flashlight inside the car to see whether it contained other occupants. This was not a trespass or invasion of the vehicle under the circumstances. It has been said that the eye alone cannot be a trespasser. Good v. State, 158 Miss. 616, 131 So. 106 (1930); Bone v, State, 207 Miss. 868, 873-874, 43 So. 2d 571 (1949). There was no arrest until the officer saw the misdemeanor committed in his presence. U. S. v. Long, 52 F. 2d 901 (C.A.D.C., 1931).

Gause v. State, 203 Miss. 377, 34 So. 2d 729 (1948), is distinguishable. Defendant was convicted of unlawful possession of intoxicating liquor. The patrolman did not make any effort to stop him at a roadblock, but, after seeing Gause pass, began chasing him, and arrested him on a charge of reckless driving, caused by the officer's chase. It was said that, conceding a patrolman has the right to stop a vehicle to examine the driver's license, "the fact remains that he did not do so," but instead began to chase Gause. The subsequent

search of his vehicle, finding intoxicating liquors, was illegal. The illegal arrest began with the chase.

In the instant case there was no search of defendant's car, except removal from his possession of the partially hidden, loaded revolver. It was visible to the sight of the officer and his assistant without trespassing upon the car, a misdemeanor committed in the presence of the officer. There was none in *Gause*.

Moreover, *Gause* did not consider the effect of Code section 8108, or the authorities dealing with that issue. Section 8117 provides that any person convicted of a violation of any provision of the act is guilty of a misdemeanor. Section 8108 requires every licensee to have his license in his possession and to display it upon demand of a peace officer. When defendant evaded the roadblock, which was simply checking operator's licenses, the officer had the right to follow him in good faith for the purpose of ascertaining whether defendant had such a license. *Gause* did not consider the application and effect of these statutes, because the state was relying solely on the evidence from an unlawful search, following an unlawful arrest. The facts and the issues in *Gause* were different from the present ones. Similarly distinguishable are One 1948 Pontiac Automobile v. State, 221 Miss. 352, 72 So. 2d 692 (1954), Smith v. State, 240 Miss. 738, 128 So. 2d 857 (1961), and Brown v. State, 227 Miss. 823, 87 So. 2d 84 (1956).

(Hn 8) Appellant argues he was entitled to a peremptory instruction, because the evidence showed two defenses to the charge permitted by Code section 2081, namely, that he was threatened and had good reason to apprehend a serious attack from a nephew, and he was traveling and was not a tramp. The former defense was submitted to the jury by an instruction. It was a jury issue as to whether the threats were too remote in time to constitute the basis of justification. The good faith with which Morgan carried the weapon was a

question for the jury. Hurst v. State, 101 Miss. 402, 408, 58 So. 206 (1912). **(Hn 9)** The traveling or setting out on a journey, intended by the statute to be an excuse for carrying a concealed weapon, means a travel of such distance as to take one beyond the circle of his friends and acquaintances. Morgan was in his home community, only a few miles from his residence. The evidence did not raise a jury issue on this defense. McGuirk v. State, 64 Miss. 209, 1 So. 103 (1886).

Affirmed.

*Lee, P. J., and Kyle, Gillespie and Jones, JJ.,* concur.