749 So.2d 1099 (1999)
Charlie Curtis NORTHINGTON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00739-COA.
Court of Appeals of Mississippi.
July 20, 1999.
*1100 Harold J. Barkley III, Aberdeen, Attorney for Appellant.
Office of the Attorney General by Wayne Snuggs, Jean Smith Vaughan, Attorneys for Appellee.
EN BANC.
THOMAS, J., for the Court:
¶ 1. Charlie Curtis Northington appeals his conviction of possession of cocaine in the Circuit Court of Monroe County. Northington was sentenced to the custody of the Mississippi Department of Corrections to serve a term of three years. Aggrieved, Northington appeals on the following issues of error:
I. WHETHER THE ARREST OF NORTHINGTON WAS BASED UPON PROBABLE CAUSE.
II. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Finding no error, we affirm.

FACTS
¶ 2. During the early morning hours of February 6, 1997, Officer Mark Fulco of the Amory Police Department, Monroe County, received a radio dispatch directing him to the Tenn-Tom Inn to investigate an anonymous report of a domestic disturbance. Once Officer Fulco arrived at the Tenn-Tom Inn, he observed a lone car occupied by four individuals, three males and one female, parked in the Tenn-Tom Inn parking lot. Northington was sitting in the driver's seat. As Officer Fulco approached the vehicle he told the occupants *1101 to place their hands where he could see them. Officer Fulco then observed Northington bend over the seat on the driver's side of the car as if he were stuffing something under the seat. At about that same time Lieutenant Will Stevens arrived at the scene, and the two officers approached the vehicle from both the passenger's and driver's sides.
¶ 3. As Lieutenant Stevens approached from the passenger's side, he observed an approximate half-case of beer on the rear floorboard of the vehicle. Monroe County is a dry county. Officer Fulco then asked the occupants to exit the vehicle, and Northington was placed under arrest for possession of alcohol in a dry county. Officer Fulco then instituted a pat down search of Northington's person. As Officer Fulco patted Northington down, he felt a plastic wrapper in the inside pocket of the blue jean jacket worn by Northington. Officer Fulco removed the tightly wrapped cellophane cigarette wrapper wherein two rocks of crack cocaine were discovered. Officer Fulco testified that once the cocaine was discovered Northington made a voluntary statement that the jacket was not his and that some unknown male had given it to him.
¶ 4. At trial Northington testified that he had left his house, near Smithville, at around 11:00 p.m. to get some diapers for his one year old daughter at the Wal-Mart Super Center in Amory. Northington testified that as he was leaving, his wife, Alison Marie Northington, handed him her blue jean jacket to wear because it was very cold outside. While driving to the Super Center, Northington stopped to pick up three hitchhikers and took them to an area motel, the Tenn-Tom Inn. Northington testified that after they arrived at the Tenn-Tom Inn, he waited in the car with two of the individuals while the third went inside to inquire about renting a room. After the third individual returned a dispute arose between the three persons Northington had picked-up. Officers Fulco and Stevens arrived shortly thereafter.
¶ 5. Northington further testified that once the cocaine was discovered, unbeknownst to him that the drugs were even in the jacket pocket, he immediately told Officer Fulco that the jacket belonged to his wife. Northington denies having stated to Officer Fulco at the time of his arrest that he got the jacket from an unknown male. Northington offered his own theory, without any corroboration, as to why the police responded to the Tenn-Tom Inn and how the cocaine came to be in the jacket he was wearing. Northington surmises that his wife, Alison, set him up by placing the cocaine in her jacket, offering the jacket to him to wear while he went for diapers, and then subsequently making the anonymous phone call reporting a disturbance at the Tenn-Tom Inn. Northington further theorized that she must have followed him in another man's truck since they only had one vehicle, which Northington was operating at the time. The other man's truck was an unidentified individual with whom Northington claims his wife was having an affair. He claims that he was without knowledge that the jacket given to him by his wife contained cocaine in its pocket.

ANALYSIS

I.

WHETHER NORTHINGTON'S ARREST WAS BASED UPON PROBABLE CAUSE.
¶ 6. Northington begins his argument by stated that under Miss.Code Ann. § 99-3-7(1) (Rev.1994) "[a]n officer or private person may arrest any person without warrant for ... A breach of peace threatened or attempted in his presence...." Northington argues that since there was no breach of peace threatened or attempted in the presence of Officer Fulco, there was no justification for his arrest without a warrant. Northington further argues that he did not have constructive possession of the alcohol as is evidenced by the fact that the beer was located on the rear floorboard *1102 near two passenger hitchhikers whom he had just picked up and offered a ride. Northington reasons that without probable cause to arrest him for possession of alcohol in a dry county, which he asserts fails to meet the elements of constructive possession, any subsequent incriminating evidence found as a result of his arrest, in this case the crack cocaine, is inadmissible.
¶ 7. Northington's argument that his arrest for possession of alcohol in a dry county was unlawful in the absence of any breach of peace threatened or attempted in Officer Fulco's presence, which he contends to be required under the plain language of § 99-3-7(1), fails to consider subsequent Mississippi Supreme Court precedent following the statute's enactment addressing the legislative intent of the same. "At common law a peace officer could arrest without a warrant for a misdemeanor committed in his presence if a breach of the peace were involved." Smith v. State, 228 Miss. 476, 479, 87 So.2d 917, 919 (1956). This ancient rule of law was vanquished in light of clear legislative action and as stated in Smith. "The legislature, by [§] 2470, Mississippi Code of 1942, extended the authority to make arrests without a warrant to indictable offenses committed or attempted in the presence of the officer whether or not a breach of peace is involved." Id.
¶ 8. The mere act of an officer, while investigating a reported domestic disturbance call, in approaching a lone car occupied with four individuals at the precise location reported to him via dispatch does not constitute the unlawful presence of that officer in investigating the reported disturbance. Such activity in conducting an investigation is not unlawful where it is undertaken in good faith for that specific purpose. Once Officer's Fulco and Stevens saw the one-half case of beer lying on the rear floorboard, in open sight of the officers eyes, while investigating in good faith a reported domestic disturbance at the Tenn-Tom Inn, probable cause for an arrest was met. See One 1992 Toyota 4-Runner, Vin. No. JT3VN39W2N8034941 v. State ex rel. Mississippi Dept. Wildlife Fisheries and Parks, 721 So.2d 609, 616 (Miss.1998); Powell v. State, 184 So.2d 866, 868 (Miss.1966); Morgan v. Town of Heidelberg, 246 Miss. 481, 488-89, 150 So.2d 512, 515 (1963); Thomas v. State, 208 Miss. 264, 267-68, 44 So.2d 403, 404 (1950). Proof that the officers approached Northington's vehicle for any other purpose than to conduct a good faith investigation has not been shown.
¶ 9. Northington argues in the alternative that given the proximity of the illegal alcohol to his person, specifically his presence in the front driver's seat with the beer's location on the rear floorboard, together with the presence of three other individuals occupying his vehicle supports the proposition that he was not in constructive possession of the alcohol so as to justify his arrest and the resulting search of his person which ultimately produced the cocaine. In short, Northington argues that proof of constructive possession is required before an officer may make a lawful arrest based on probable cause. We disagree. The issue of whether an individual is in constructive possession of alcohol in a dry county need not arise in the officer's determination of whether probable cause exists to effectuate a lawful arrest. Once the alcohol was observed by the officers, which was clearly visible to them as it lay on the rear floorboard of Northington's vehicle, then the issue of probable cause had been met to support an arrest for possession of alcohol in a dry county. This assignment of error is without merit.

II.

WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 10. Northington argues that the jury's verdict was against the overwhelming weight of the evidence and therefore *1103 the court should have granted his motion for a new trial or in the alternative for a judgment notwithstanding the verdict. Northington argues that the State failed to establish a prima facie case of possession of a controlled substance. In opposition, the State argues that there was more than ample support for the jury's verdict, and therefore it should stand.
¶ 11. A motion for judgment notwithstanding the verdict challenges the legal sufficiency of the evidence supporting the jury's verdict of guilty. McClain v. State, 625 So.2d 774, 778 (Miss.1993); Butler v. State, 544 So.2d 816, 819 (Miss.1989).
[T]he evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with [Northington's] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Jones v. State, 669 So.2d 1383, 1388 (Miss. 1995) (quoting McClain, 625 So.2d at 778).
¶ 12. A separate challenge is made in a motion for new trial. A motion for new trial challenges the weight of the evidence rather that its legal sufficiency. McClain, 625 So.2d at 781; Butler, 544 So.2d at 819. In motions for new trial, the jury's verdict should only be set aside when, in the exercise of the trial judge's sound judgment he is convinced that the jury's verdict is contrary to the substantial weight of the evidence. Butler, 544 So.2d at 819; Russell v. State, 506 So.2d 974, 977 (Miss.1987). We will not reverse our lower court's decisions in such matters unless the verdict is against the substantial weight of the evidence. Id. Our goal in reviewing whether substantial evidence exists to support the jury's verdict is the prevention of an "unconscionable injustice." Pierre v. State, 607 So.2d 43, 54 (Miss.1992).
¶ 13. There is no doubt that Northington had on his person at the time of his arrest an illegal controlled substance, two rocks of crack cocaine. Northington does not dispute that the cocaine was found in the inside pocket of the jacket he was wearing. Northington does, however, dispute whether he "knowingly or intentionally" possessed the cocaine. Northington's sole evidence that the jacket was not his, but his wife's, comes in the form of his own testimony. At trial, Northington asserted that his wife, Marie, in an apparent effort to leave him for another man, manipulated the events of that night in order to set him up. Northington testified that he believed that Marie placed the cocaine in the jacket knowing that he was going to get diapers for their child and offered the jacket to him as he left, which he testified he accepted but did not check the pockets. Northington further theorized that she must have followed him in her boyfriend's truck to the Tenn-Tom Inn and then made the anonymous phone call reporting a domestic disturbance at that location. However, Northington could produce no evidence in support of his assertions.
¶ 14. Based on these assertions, Northington argues that the jury's verdict was against the overwhelming weight of the evidence or in the alternative that the verdict was against the legal sufficiency of the evidence presented. When presented with conflicting theories as to the actual events which transpired, the jury "is the judge of the weight and credibility of the testimony and is free to accept or reject all or some of the testimony given by each witness." Meshell v. State, 506 So.2d 989, 992 (Miss.1987). "Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear.... It is enough that the conflicting evidence presented a factual dispute for *1104 jury resolution." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983) (quoting Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979)). In view the evidence presented, we cannot conclude that the evidence presented was such that reasonable and fair-minded jurors could only find the accused not guilty. Nor is it evident that the evidence was so insufficiently weighted as to require a new trial. This assignment is without merit.
¶ 15. THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF COCAINE AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $1000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MONROE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.
MOORE, J., NOT PARTICIPATING.